STATE OF NEBRASKA, APPELLEE, V. ROGER L. STALDER, APPELLANT.

438 N.W.2d 498

Filed April 21, 1989. No. 88-481.

Louie M. Ligouri for appellant.

Robert M. Spire, Attorney General, and Denise Frost for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

GRANT, J.

This is an appeal from the district court for Richardson County. The defendant-appellant, Roger L. Stalder, was charged by information with the offense of being a felon in possession of a firearm with a barrel less than 18 inches in length, in violation of Neb. Rev. Stat. § 28-1206 (Reissue 1985). Defendant pled not guilty. Before trial, he filed a motion to suppress the admission of a handgun obtained and seized as a result of a search of his vehicle. The trial court overruled the defendant's motion.

The matter was tried before a jury on April 4, 1988. The jury returned a verdict of guilty, and on May 5, 1988, the defendant was sentenced to 2 years in the Nebraska Penal and

Correctional Complex. Defendant appeals, contending the district court erred (1) in overruling his motion to suppress the handgun seized during the search of his vehicle and (2) in instructing the jury that the presence of the handgun in his vehicle was prima facie evidence that the handgun was in his possession. We reverse and remand for a new trial.

On the afternoon of November 3, 1987, a Nebraska State Patrol officer observed the defendant traveling in excess of the speed limit on a gravel county road in Richardson County. The officer stopped the vehicle. Defendant was alone in his car. After obtaining the defendant's driver's license, the officer radioed for a warrant search and was informed that an active warrant for the arrest of defendant was on file. Another officer was called to the scene, and the defendant was placed under arrest.

At the point where defendant was stopped, there were no shoulders on either side of the roadway. After he was placed under arrest, the defendant asked what was going to happen to his car. When he was told it probably would be towed, the defendant requested that his vehicle be taken to a nearby farmyard rather than be towed. The officers then contacted the owner of the farm, and, after securing the farmer's permission to park defendant's car in the farmyard, one of the officers drove the defendant's vehicle from the roadway and into the farmyard.

After he parked defendant's car in the farmyard, the assisting officer conducted "a brief inventory search of the vehicle to attempt to secure it . . . ." The officer testified that he could lock the doors of the vehicle, but that the rear window had a "roll-down handle on the outside which could not be secured." This meant that the car could not be secured because entry could be made by rolling down the rear window.

The officer then conducted a search of the vehicle to see if there were "any type of valuables in the vehicle." He sat in the driver's seat and lifted the lid on the console between the driver's seat and the passenger seat. The console was not locked or latched. After the officer lifted the console lid, he saw a silver .22-caliber semiautomatic handgun in a holster, with a clip of ammunition next to it. The barrel of the pistol was

approximately 2 inches long. The officer then tried to open the glove compartment, but it was locked, and he did not search further. The officer did not find any items of value in the car other than the gun and clip, which were handed over to the arresting officer. Defendant's car was left in the farmyard, and defendant was taken from the scene for processing.

Defendant later filed a motion to suppress the evidence seized during the search of his vehicle on the grounds that his vehicle had been "subjected to a warrantless search in violation of the Fourth and Fourteenth Amendments of the United States Constitution and in violation of Section 7 of Article I of the Constitution of the State of Nebraska." After hearing, the district court overruled the motion to suppress, and the case went to trial before a jury. During the trial, defendant again objected to the introduction of the handgun as evidence, and his objection was overruled. Defendant was convicted and timely appealed. In this court he assigned the errors set out above.

In connection with defendant's first assignment of error, we have held that in reviewing a trial court's ruling denying a motion to suppress evidence, this court affords the lower court great deference. This court will not overrule the trial court's decision unless it was clearly wrong given the totality of the circumstances. *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986).

Insofar as defendant rests his contention for suppression of the handgun evidence on the "warrantless search of his motor vehicle," as stated in his first assignment of error, the decision in cases such as the one before us does not depend on the issuance of a warrant or not, but on the reasonableness of the search. As stated by Justice Black in his concurring and dissenting opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), and as quoted in *South Dakota v. Opperman*, 428 U.S. 364, 372-73, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976):

> "[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only '*unreasonable* searches and seizures.' The relevant test *is not the reasonableness of the opportunity to procure a*

*warrant*, but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts."

(Emphasis in original.) We must determine if the search was unreasonable in defendant's case.

We have held that inventory searches are permissible after an arrest. *State v. Hill*, 214 Neb. 865, 336 N.W.2d 325 (1983). We have also held that an arrestee's permission is not required to conduct an inventory search and that evidence discovered incident to an inventory search is admissible in court. *State v. Wallen*, 185 Neb. 44, 173 N.W.2d 372 (1970), *cert. denied* 399 U.S. 912, 90 S. Ct. 2211, 26 L. Ed. 2d 568. See, also, *South Dakota v. Opperman, supra*; *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987); *Cooper v. California*, 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967), *reh'g denied* 386 U.S. 988, 87 S. Ct. 1283, 18 L. Ed. 2d 243.

In *State v. Wallen, supra* at 46-47, 173 N.W.2d at 374, we held:

> Taking an inventory of the contents of the automobile to insure the return of all the personal property to the defendant and to protect the patrol against false claim of loss while in the custody of law enforcement officers is a salutary practice whether required by rule or common practice.

Defendant contends that his motion to suppress should have been granted because his vehicle was never impounded by the officers and there was no showing that the officers had followed a standard procedure in making what the officers called an inventory search.

The record shows that defendant's vehicle was not impounded, in the sense that the car was towed to a police lot for safekeeping. We do not believe that "impoundment" is necessary to establish the validity of an inventory search in all situations.

As stated in *South Dakota v. Opperman, supra* at 428 U.S. at 373: "In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded *or otherwise in lawful police*

*custody* where the process is aimed at securing or protecting the car and its contents." (Emphasis supplied.)

In the case before us, there is no doubt that the car was in lawful police custody. The driver of the car was under arrest and had been separated from his car. The car was partially in a driving lane, and there was no shoulder available for parking the car out of the way of possible traffic. The officers had a duty to secure the car while they further processed its owner, the defendant.

Upon being told the car would probably have to be towed, defendant asked if the car could be stored temporarily in the farmyard adjoining the road until it could be picked up by his wife. Using common sense, the officers obtained permission from the landowner to use the farmyard and drove defendant's car into the yard. This saved defendant the expense of towing his car from the rural area and saved the officers substantial time by eliminating the need to have one of the officers wait until the other found and engaged a tow truck.

Then, after the assisting officer drove the car into the yard, he discovered he could not secure it because he could not lock the rear window. If the car was to be left in the farmyard, the officer had a duty to secure the car, as best he could under the circumstances, from possible theft of the car owner's property in the car. The officer then began a brief inventory search, looking for valuables. In an unlocked console box he found the handgun in question. The officer did not attempt to further investigate the locked glove compartment, thus further establishing the fact that he made the least intrusion possible under the circumstances.

In *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976), the U.S. Supreme Court stated:

When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, *United States v. Mitchell*, 458 F. 2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property,

*United States v. Kelehar*, 470 F. 2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper v. California, supra*, at 61-62. The practice has been viewed as essential to respond to incidents of theft or vandalism. See *Cabbler v. Commonwealth*, 12 Va. 520, 522, 184 S. E. 2d 781, 782 (1971), cert. denied, 405 U. S. 1073 (1972); *Warrix v. State*, 50 Wis. 2d 368, 376, 184 N. W. 2d 189, 194 (1971). In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.

In the case before us, although the car was not officially "impounded," nonetheless it was in lawful police custody to a sufficient degree to make the reasons set out above applicable to the situation confronting the officers in rural Richardson County. The actions of the state troopers did not constitute an unreasonable search and seizure in view of all the circumstances present.

Further, as was the case in *State v. Wallen*, 185 Neb. 44, 173 N.W.2d 372 (1970), there is no evidence in the record that the inventory was a subterfuge for an unlawful search for evidence to convict for crime. See, *Heffley v. State*, 83 Nev. 100, 423 P.2d 666 (1967); *State v. Montague*, 73 Wash. 2d 381, 438 P.2d 571 (1968). The record shows that the officers' actions were prudent under the circumstances.

With regard to defendant's contention that the State made no showing that the officers had followed a standard procedure in conducting the inventory search, a somewhat more difficult problem is before us.

The record makes no reference to any standard operating procedures which the officers followed. In *South Dakota v. Opperman, supra* at 374-75, the U.S. Supreme Court noted that inventory searches were "carried out in accordance with *standard procedures* in the local police department," and, in a concurring opinion to *Opperman*, Justice Powell stated, "[T]he search here was . . . conducted strictly in accord with the regulations of the Vermillion Police Department." 428 U.S. at 380. In *Colorado v. Bertine*, 479 U.S. 367, 369, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987), the Court referred to "local police procedures, which require a detailed inspection and inventory

of impounded vehicles."

The concern with following standard procedures is, of course, a concern over a police officer in the field following his own unbridled discretion. We share that concern. Nonetheless, in the case before us, the searching officer made as little intrusion into the car as possible, and his limited intrusion was based on a search for valuables because he could not secure the car itself from entry through the rear window.

The trial court, in effect, found there was no unreasonable search and seizure. The trial court's decision to deny the motion to suppress was not clearly wrong under the circumstances.

Defendant also assigns as error the action of the trial court in instructing the jury that the presence of the handgun in the defendant's vehicle was prima facie evidence that he was in possession of the handgun. This instruction sets out Neb. Rev. Stat. § 28-1212 (Reissue 1985), which provides: "The presence in a motor vehicle other than a public vehicle of any firearm . . . shall be prima facie evidence that it is in the possession of, and is carried by, all persons occupying such motor vehicle at the time such firearm or instrument is found . . . ." The defendant bases his argument on two points: (1) that he was not in the car when the gun was found, and (2) the assumption that this statute is unconstitutional in that it forced him to establish his innocence.

With regard to the first point, defendant's contention, at first blush, appears to be frivolous, but he presents a difficult question. The statute clearly states that a prima facie case arises as to possession of a proscribed firearm in occupants of an automobile "at the time such firearm . . . is found." Recognizing that criminal statutes must be strictly construed, *State v. Douglas*, 222 Neb. 833, 388 N.W.2d 801 (1986), the fact remains that the strict construction advocated by defendant would render the statute meaningless in many cases.

We note first of all that § 28-1212 is not a statute defining a crime, but is a statute concerning evidentiary proof of a crime. In that situation, the strict construction above referred to is not controlling.

We recognize that the statute, read literally, applies only to those occupying the car at the time the firearm was found. If strictly construed, the statute would not apply to defendant in

this case because, as defendant contends, when the gun was found, defendant did not occupy the car. Similarly, if a person were stopped after a high-speed chase and immediately got out of his car and approached the arresting officer, any firearm found instants later in the car would not be presumptive evidence of possession against that person because he was not an occupant of the car *at the time* the gun was found. Such an interpretation would make the statute of limited application.

Accordingly, we follow the reasoning set out in *People v. Crenshaw*, 202 Misc. 179, 183, 117 N.Y.S.2d 202, 206 (1951), wherein that court stated, in considering a very similar statute:

> In other words, this court gives legal sanction to the pertinency of section 1898-a of the Penal Law, as affecting persons not found physically inside an automobile at the time the designated weapon, instrument or appliance is found therein, only when other circumstances are present as would denote their constructive occupancy of such vehicle. Accordingly, the promulgation of the rule of constructive occupancy would be restricted to and become operative only in relation to persons who were known occupants of an automobile immediately preceding the finding of the prohibited weapon therein, irrespective of the locale of their arrest, or the time intervening therefor, *provided* the automobile in question has been under continuous custody or surveillance during the interval of the flight of the accused and the finding of the weapon, as to make such constructive occupancy uninterrupted and directly connecting the known occupants with the found prohibited weapon.

In the *Crenshaw* case, the police found the gun in a car the occupants had been removed from, but which had been left unattended for 40 minutes while the police questioned the occupants. The court held that the occupants were not chargeable with occupancy of the car during the 40-minute interval, and the statute could not be used.

In the case before us, the defendant's car was never left unattended before the gun was found. At all times, both the defendant and the car were in view of the arresting officers. We determine that defendant was in constructive occupancy of the

car, under all the facts of this case, and § 28-1212 may be applied against him.

· Defendant's second assignment is directed to the instruction setting out the statute. The instruction given by the court provided:

> The statutes of the State of Nebraska at the time alleged in [the] information provided in substance as follows:
>
> Any person who possesses any firearm with a barrel less than eighteen inches in length . . . and who has previously been convicted of a felony . . . commits the offense of possission [sic] of firearms by a felon . . .
>
> and
>
> The presence in a motor vehicle other than a public vehicle of any firearm or instrument . . . shall be prima facie evidence that it is in the possession of, and is carried by, all persons occupying such motor vehicle at the time such firearm or instrument is found . . . .
>
> Any person found guilty of the violation of such statute shall be punished as provided by law.

At the instruction conference, the only objection to this instruction was stated to be:

> The basis of my objection to that part of the instruction is that the testimony of the officer who found the weapon was that Mr. Stalder [the defendant] was not in or occupying the motor vehicle at the time such firearm was found, but on the contrary, Mr. Stalder was occupying a separate vehicle; that being the vehicle of Officer Bybee.

That contention was discussed above.

Nonetheless, although there was no other objection to the instruction, the fact remains that it is the duty of the trial court to properly instruct the jury on the law applicable to the case, whether requested to do so or not. *State v. Breaker*, 178 Neb. 887, 136 N.W.2d 161 (1965); *State v. Bachkora*, 229 Neb. 421, 427 N.W.2d 71 (1988).

We note first of all that combining the statutory definition of the crime in question with the statutory evidentiary provisions concerning "possession," and then stating that a person violating "such statute shall be punished as provided by law," leads to some confusion, because the evidentiary statute does

not call for any punishment. The two concepts would be clearer if separated.

When instructions are given as to presumptions in a criminal case, those instructions must conform to the requirements of Neb. Evid. R. 303, Neb. Rev. Stat. § 27-303 (Reissue 1985), regarding presumptions in criminal cases. Whether § 27-303 be construed to refer to presumptions or to permitted inferences, it is clear that § 27-303 should be applied when a jury is instructed as to § 28-1212, as in this case. Section 27-303(1) provides that presumptions "including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this rule." Such statutory provisions are involved in this case. Section 28-1212 provides: "The presence in a motor vehicle . . . of any firearm . . . shall be prima facie evidence that it is in the possession of . . . all persons occupying such motor vehicle . . . ." Section 27-303 must be complied with in this case.

There is no doubt that sufficient evidence was presented by the State to warrant the submission of an instruction, insofar as subsections (1) and (2) of § 27-303 are concerned. The subsections provide generally when such instructions may be given.

Section 27-303(3) provides:

> Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact *but does not require it to do so*. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge *shall instruct the jury that its existence must, on all the evidence, be proved beyond a reasonable doubt.*

(Emphasis supplied.)

In the case at bar, the court did not comply with the requirements of § 27-303(3), in that the instruction given did not inform the jury that, while it could "regard the basic facts as sufficient evidence of the presumed fact," it was not required to do so, nor did the instruction given inform the jury that while presence of the gun is "prima facie" evidence of possession, the fact of possession must, "on all the evidence, be proved beyond

a reasonable doubt." In other words, the fact that the statute is applicable does not necessarily mean the defendant was in possession of the gun. The fact of possession must be determined by all the evidence in the case.

In fact, in the instant case, the jury was not instructed or given any information at all as to the meaning of "prima facie"—a concept that sometimes eludes scholars in the law, or, at least, leads to differences of opinion. The concept of "prima facie evidence" is usually one for the trial judge to use in determining if there is sufficient evidence to send the case to the jury.

We note the court's failure to follow the requirements of § 27-303(3) as plain error, and the cause must be remanded for new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.