STATE OF NEBRASKA, APPELLEE, V. ROBERT C. BLACKSON, APPELLANT.

487 N.W.2d 580

Filed April 28, 1992.   No. A-91-339.

John B. Ashford, of Bradford, Coenen & Ashford, for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

SIEVERS, Chief Judge, and HANNON and WRIGHT, Judges.

WRIGHT, Judge.

Robert C. Blackson appeals his felony conviction for second offense carrying a concealed weapon. Appellant was sentenced to 15 to 30 months' imprisonment, with credit for 214 days served. Appellant assigns as error the trial court's giving of jury instruction No. 10, which he contends adversely affected a substantial right of the appellant. The appellant also assigned as error the refusal of the trial court to allow into evidence the convictions of the co-offenders.

## STANDARD OF REVIEW

In an appeal based on a claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991).

All jury instructions must be read together, and if the instructions, taken as a whole, correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error. *State v. Johnson*, 236 Neb. 831, 464 N.W.2d 167 (1991).

## FACTS

On Sunday, April 22, 1990, a security officer at Phil's Foodway at 3030 Ames Avenue in Omaha heard gunshots outside the store. Willis Sherman, an off-duty police officer, testified he believed the shots came from a few feet outside the store. He looked and saw someone running, whom he recognized as the defendant, Robert Blackson. Blackson ran and got into the front passenger seat of a brown Chevrolet Impala, which left the parking lot and headed west on Ames Avenue. A black Chevrolet was also seen in the parking lot, west of the store in the direction from which Sherman had heard the gunfire. Sherman testified he did not see a gun in Blackson's possession, but that Blackson's left hand was at his side and his right hand was gripping his body on the right side in the liver area.

Officer Mark Cupak of the Omaha Police Division testified that he and his partner were in the process of transporting two individuals to police headquarters when, hearing a radio broadcast about the two Chevrolets, one of the individuals in their car volunteered that if they were looking for Blackson, he was in the car that had just passed them. The brown Chevrolet was pulled over, and the parties in that vehicle were identified as Gregory Bush, the driver; Clarence Locket and James Dancer, two passengers in the rear; and Blackson, in the front. A search of the vehicle revealed a small .22-caliber revolver with two bullets under the front passenger seat and a .38-caliber revolver under the driver's seat.

At the trial, Blackson testified that the gun found under the seat was not the same gun that Dancer had shown him earlier in the day. Dancer said that when the group was at the Foodway parking lot, shots were fired from the black Chevrolet and that the defendant shot at the black Chevrolet from outside the car door of the brown Chevrolet. Dancer said that when the police

pulled them over, Locket put the .38 in the lap of Dancer, who then handed it back to Locket, who put it under the driver's seat, and that Blackson put the .22 under his seat. Jerry Tosoni, a crime lab technician for the Omaha Police Division, testified that he fingerprinted the two weapons on April 24, but there was insufficient fingerprint detail for a comparison.

Another witness, Yshall Davis, testified that Dancer called her about a week and a half after the incident and said the police would drop the case against him if he would testify that the gun belonged to the defendant. She stated that Dancer told her he was threatened with perjury if he tried to speak on Blackson's behalf.

Blackson was found guilty of carrying a concealed weapon. At an enhancement hearing, it was found to be Blackson's second offense, and he was sentenced to 15 to 30 months in prison and given credit for the 214 days served. Blackson claims the court erred in giving jury instruction No. 10.

## JURY INSTRUCTION NO. 10

Jury instruction No. 10 read:

> The presence in a motor vehicle of any firearm shall be prima facie evidence that it is in the possession of, and is carried by, all persons occupying such motor vehicle at the time such firearm is found, unless such firearm is found upon the person of one of the occupants.

> You may regard the basic facts as sufficient evidence of the presumed fact, but you are not required to do so. The presumed fact must, on all the evidence, be proved beyond a reasonable doubt.

After this appeal was filed, the Nebraska Supreme Court ruled in *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991), that an instruction strikingly similar to this instruction improperly shifted the burden of persuasion to the defendant concerning the elements of the crime, relieving the State of its burden. The court held that the instruction deprived the appellant of a fair trial, as required under the constitutional guarantee of due process, and the conviction was set aside and the cause remanded for a new trial.

In *Jasper*, the appellant was convicted of possession of a

short shotgun. Upon an inventory of the trunk, the officers discovered an unzipped gym bag which contained a short shotgun. An investigation failed to establish the defendant's fingerprints on the gun. The court, over Jasper's objection, gave the following instruction:

> "The presence in a motor vehicle of any firearm shall be prima facie evidence that it is in possession of, and is carried by, all persons occupying such motor vehicle at the time such firearm is found, unless such firearm is found upon the person of one of the occupants.

> "Prima facie evidence is evidence sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted.

> "You may accept any presumption raised by prima facie evidence, but you are not required to do so. The evidence of presence of the firearm in the vehicle must be shown beyond a reasonable doubt."

*Jasper*, 237 Neb. at 756, 467 N.W.2d at 858.

The court also instructed the jury that Jasper was presumed innocent until proven guilty beyond a reasonable doubt and that the burden of proof concerning all elements of the crime, including Jasper's control over a short shotgun and his "willful intentional and knowing" possession of the firearm, remained with the State and never shifted to Jasper. *Id*.

The court in *Jasper*, citing its decision in *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990), held that a jury instruction founded on a presumption created by a statute was constitutionally impermissible because such instruction deprived a defendant of the due process right that requires the State to prove beyond a reasonable doubt each element of the crime charged and that such instruction shifted the burden to the defendant to disprove the element of intent in the offense charged. In *Jasper*, the court stated that the defendant was not charged with "presence in a vehicle containing a short shotgun" but was charged with actual possession. The court stated that based on mere presence of the firearm there could be no constitutionally permissible instruction that the jury must infer Jasper's commission of the crime charged or any element of the crime charged. Jasper's due process right to a fair trial was

violated by an instruction which required that the jury draw an inference adverse to the defendant. *Jasper, supra*.

In the instant case, Blackson was not charged with possession of a short shotgun, but with carrying a concealed weapon, in violation of Neb. Rev. Stat. § 28-1202 (Reissue 1989). Instruction No. 10, which created the presumption that the concealed weapon "is carried by" Blackson, is similar to the instruction in *Jasper*. The holding in *Jasper* should, therefore, be applied to the present case. We reverse the judgment of conviction and remand the cause for a new trial.

The statute defines carrying a concealed weapon as occurring when "any person . . . carries a weapon or weapons concealed on or about his . . . person . . . ." § 28-1202(1). This statute does not require possession, as did the statute in *Jasper*, but only that an individual carry the weapon. Black's Law Dictionary 214 (6th ed. 1990) defines carrying arms or weapons as wearing, bearing, or carrying them "upon the person or in the clothing or in a pocket, for the purpose of use, or for the purpose of being armed and ready for offensive or defensive action in case of a conflict with another person." By instructing the jury on the presumption of Neb. Rev. Stat. § 28-1212 (Reissue 1989) that all individuals in a motor vehicle are in possession of or are carrying any firearm found in that vehicle, the trial court in effect directed a verdict against the appellant. We recognize that in giving this instruction, the trial court was quoting Neb. Rev. Stat. § 27-303(3) (Reissue 1989). However, in light of the Nebraska Supreme Court's decision in *State v. Jasper*, we believe we must find the instruction adversely affected a substantial right of the appellant.

As the U.S. Supreme Court noted in *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction. Due process in a criminal case requires that the prosecution prove, beyond a reasonable doubt, every factual element necessary to constitute the crime charged against the defendant. *State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991). We cannot say that instruction No. 10 did not cause the jury to infer that possession and carrying of a

concealed weapon by Blackson were to be presumed because the weapon was found in the car.

An instruction about a judicial standard for evaluating evidence does not help the jury in discharging its duty of factfinding and may serve only to hinder the factual determinations of the jury. *Jasper, supra*. The innocence of the defendant is presumed and requires the prosecution to prove evidence of guilt and to persuade the finder of fact of guilt beyond a reasonable doubt in order to secure a conviction. Thus, the State's burden of proof beyond a reasonable doubt in criminal cases "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis v. Franklin*, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985). Instruction No. 10 deprived the defendant of a due process right that the State must prove beyond a reasonable doubt each element of the crime charged and shifted the burden to the defendant to disprove the element of the offense charged that the defendant was carrying a concealed weapon.

The State argues that even if instruction No. 10 was wrong, it was harmless error. The Supreme Court considered a similar argument in *Jasper* and found that when all jury instructions were read together, they must not mislead the jury and must correctly state the law. *Jasper, supra*. Here, it cannot be said that instruction No. 10 would not mislead the jury. "You may regard the basic facts as sufficient evidence of the presumed fact, but you are not required to do so. The presumed fact must, on all of the evidence, be proved beyond a reasonable doubt." These sentences are conflicting. One sentence told the jury that the facts were sufficient evidence of the presumed fact. The other sentence required the facts to be proved beyond a reasonable doubt. We cannot say the instruction was harmless error.

A presumption is a fact inferred from another proved or established fact or facts. *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). Thus, once the .22 was found in the motor vehicle, the jury was allowed to presume that Blackson was carrying a concealed weapon. The "prima facie evidence

standard" was improperly included in instruction No. 10. Contradictory sentences within the instruction had the likelihood of misleading the jury.

The Due Process Clause in the 14th Amendment prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of the crime. *Francis, supra*; *Kipf, supra*.

"[W]hether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom*, 442 U.S. at 514.

We cannot conclude that the verdict would have been the same had the jury never received instruction No. 10. We cannot say the instruction was harmless.

Because we reverse and remand for a new trial, we do not address the appellant's second assignment of error.

The judgment of conviction is reversed, and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.