Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/20/2018 09:11 AM CST

State of Nebraska, appellee, v.
Kirk A. Botts, appellant.
___ N.W.2d ___

Filed November 13, 2018.    No. A-16-985.

1. **Jury Instructions.** Whether jury instructions are correct is a question
   of law.
2. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on
   a claim of an erroneous jury instruction, the appellant has the burden
   to show that the questioned instruction was prejudicial or otherwise
   adversely affected a substantial right of the appellant.
3. **Jury Instructions: Appeal and Error.** All the jury instructions must
   be read together, and if, taken as a whole, they correctly state the law,
   are not misleading, and adequately cover the issues supported by the
   pleadings and the evidence, there is no prejudicial error necessitat-
   ing reversal.
4. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules
   apply, the admissibility of evidence is controlled by the Nebraska
   Evidence Rules; judicial discretion is involved only when the rules make
   discretion a factor in determining admissibility.
5. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence
   Rules commit the evidentiary question at issue to the discretion of the
   trial court, an appellate court reviews the admissibility of evidence for
   an abuse of discretion.
6. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evi-
   dence claim, whether the evidence is direct, circumstantial, or a com-
   bination thereof, the standard is the same: An appellate court does not
   resolve conflicts in the evidence, pass on the credibility of witnesses, or
   reweigh the evidence; such matters are for the finder of fact.
7. **Criminal Law: Evidence: Appeal and Error.** The relevant question in
   reviewing a sufficiency of the evidence claim is whether, after viewing
   the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Matthew K. Kosmicki, of Kosmicki Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Pirtle, Riedmann, and Welch, Judges.

Pirtle, Judge.

## INTRODUCTION

Kirk A. Botts appeals from his conviction in the district court for Lancaster County for possession of a knife by a felon. He challenges the court's use of a specific jury instruction, its overruling of objections to certain testimony at trial, and its failure to find the evidence insufficient to find him guilty. Based on the reasons that follow, we affirm.

## BACKGROUND

This is the second time this appeal is before this court. The first time Botts' appeal was before us, we concluded that his arrest was made without probable cause and that the resulting inventory search was invalid. We reversed Botts' conviction and remanded the matter to the trial court with directions to vacate Botts' conviction and dismiss the charge against him. We did not address Botts' other assignments of error. See *State v. Botts*, 25 Neb. App. 372, 905 N.W.2d 704 (2017), *reversed* 299 Neb. 806, 910 N.W.2d 779 (2018). The Nebraska Supreme Court subsequently granted the State's petition for further review, reversed our decision, and "remand[ed] this appeal" back to us "to consider Botts' other assignments of error." See *State v. Botts*, 299 Neb. at 818, 910 N.W.2d at 789.

The following facts were set forth in our first opinion: The State filed an amended information charging Botts with possession of a knife by a felon, a Class III felony. Botts entered a plea of not guilty. He later filed a motion to suppress evidence and statements, and a hearing was held on the motion.

At the motion to suppress hearing, Lincoln police officer Jason Drager testified that on March 10, 2016, around 2:30 a.m., he was driving back to his police station in his police cruiser. While driving, he saw a vehicle on a side street that was not moving and was partially blocking the roadway. The vehicle was situated at an angle, with the front end by the curb and the back end blocking part of the street. Drager thought maybe there had been an accident. He turned down the street and saw an individual standing by the driver's side of the vehicle. Drager turned on his cruiser's overhead lights, parked his cruiser behind the vehicle, and contacted the individual, later identified as Botts. He asked Botts what was going on, and Botts initially told Drager "to mind [his] own business." When Drager asked Botts again about what had happened, Botts told Drager that Botts' vehicle was out of gas and that he was trying to push it to the side of the road. Drager testified that he did not recall Botts' saying that he drove the vehicle there. Botts asked Drager if he could help him, and Drager told him he could not help based on Lincoln Police Department policy.

Drager testified that he decided he should remain at the location because Botts' vehicle was blocking the roadway and could cause an accident. Drager then stood back by his cruiser and watched Botts push the vehicle back and forth. Drager stated that Botts became "verbally abusive" toward him after he said he could not help him, so Drager decided to ask other officers to come to the location for safety purposes. Three other officers responded.

One of the officers who responded, Officer Phillip Tran, advised Drager that he had stopped Botts a couple hours earlier that night for traffic violations. Drager testified that Tran told

him he had detected an odor of alcohol on Botts at the time of the earlier stop. Based on the information from Tran, Drager decided to approach Botts and ask him if he had been drinking. Drager testified that when he asked Botts if he had been drinking, Botts became angry, started yelling, and started backing up away from him.

Drager testified that Botts' demeanor led him to believe he was under the influence of "some kind of alcohol or drug." However, Drager testified that he did not believe alcohol or drugs were affecting Botts' ability to answer questions. Drager did not recall Botts' stating that he had been drinking.

Drager testified that Botts backed up to the other side of the street and ended up with his back against a light pole. When he was backing up, he was not coming at the officers and was not making threats. The four officers surrounded Botts by the light pole. Botts started yelling "something along the line of shoot me, shoot me." Drager testified that Officer David Lopez, one of the officers at the scene, pulled out his Taser for safety purposes and to try to get Botts to comply with their request to put his hands behind his back. He eventually did so and was handcuffed and placed in the back of Drager's cruiser.

Drager testified that the officers were telling Botts to put his hands behind his back for their safety and Botts' safety. Drager stated that he was concerned for his safety because Botts was being verbally abusive.

Drager testified that after Botts was arrested, the officers decided to tow Botts' vehicle because it was blocking the road. He stated that it is Lincoln Police Department policy to search vehicles that are going to be towed. Tran began to search the vehicle and saw the handle of a machete sticking out from underneath the driver's seat. Drager testified that after Tran discovered the machete, Botts was under arrest for being in possession of a concealed weapon.

Tran also testified at the hearing on the motion to suppress. He testified that he had contact with Botts around midnight

on March 10, 2016, a couple hours before Drager made contact with him. He testified that he stopped Botts for not having his headlights on and for driving erratically. Tran testified that during that contact, he noticed a "slight odor of alcohol," and that there was recently-purchased alcohol in the vehicle. Botts was the driver of the vehicle, and there was more than one passenger. Tran testified that he did not initiate a driving under the influence investigation because he did not see enough signs to believe that Botts was intoxicated.

Tran testified that he and another officer responded to Drager's call for assistance and that when they arrived, he told Drager about his previous contact with Botts. Tran testified that Drager and Lopez then made contact with Botts at his vehicle, at which time his statements and demeanor became erratic. Tran stated Botts backed away from the two officers and was making statements such as "shoot me, kill me, things like that." He also heard Botts make statements indicating the police were harassing him and treating him differently than they would if he were "a white man." Tran testified that Botts backed up to a light pole and that the four officers were around Botts. One of the officers asked Botts to put his hands behind his back, and Botts responded that he was not doing anything wrong. Tran testified that during that time, Lopez had his Taser out. Botts eventually put his hands behind his back and was handcuffed.

Tran testified that as soon as Botts was handcuffed, he walked over to Botts' vehicle and looked inside the driver's side front window, which was rolled down. He then saw the handle of a machete sticking out from under the driver's seat. He retrieved the machete out of the vehicle after it was decided that the vehicle would be towed. He testified that the officers were required to do an inventory search every time a vehicle is towed.

The State offered into evidence three exhibits, which were DVD's each containing a video recording from the encounter with Botts: one from Drager's cruiser, one from Drager's body

camera, and one from Tran's cruiser. The exhibits showed the interaction between Botts and the officers, including Botts' transport to jail. The video recording from Drager's cruiser showed that when Botts was sitting in Drager's cruiser, Botts saw Tran remove the machete from Botts' vehicle. Botts then began making statements indicating that the machete was his and that he knew it was in his vehicle. Specifically, he stated multiple times that he used the machete for his business, which involved cutting weeds. Botts also made statements indicating that the vehicle where the machete was found was his vehicle. Botts was never read his *Miranda* rights.

Following the hearing, the trial court overruled the motion to suppress.

A jury trial was subsequently held on the charge. During the trial, Botts renewed his motion to suppress, which was again overruled. Drager and Tran both testified, and their testimony was consistent with that set forth above.

Lopez also testified at trial. He testified that based on information provided by Tran about the earlier stop, the officers thought Botts' vehicle was possibly positioned as it was because he had an alcohol-related accident. Lopez testified that when he and Drager approached Botts and asked if he had been drinking, he became very agitated. He was not acting very rational and was yelling. Lopez testified that during the encounter, he drew his Taser because of Botts' agitated behavior. He stated the Taser was displayed as a deescalation tactic and as a means to get Botts to comply with the officers' directions. He testified that he did not deploy the Taser and that Botts was eventually handcuffed.

The State also offered into evidence an edited version of Drager's cruiser video recording, a photograph of the machete found in Botts' vehicle, and an edited version of Tran's cruiser video recording. Also, the parties stipulated that Botts had a previous felony conviction. Botts did not present any evidence. The jury returned a verdict of guilty, and the court accepted the jury's verdict.

The trial court sentenced Botts to 1 year's imprisonment and 1 year's postrelease supervision.

## ASSIGNMENTS OF ERROR

Botts assigns that the trial court erred in (1) giving an erroneous and prejudicial jury instruction, (2) failing to sustain his objections to certain testimony, and (3) finding that the evidence was sufficient to support a guilty verdict.

## STANDARD OF REVIEW

[1-3] Whether jury instructions are correct is a question of law. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016). In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Id.* All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *Id.*

[4,5] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

[6,7] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Samayoa*, 292 Neb. 334, 873 N.W.2d 449 (2015). The relevant question is whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

## ANALYSIS

*Jury Instruction.*

Botts first assigns that the trial court erred in giving the jury an erroneous and prejudicial instruction, specifically jury instruction No. 4. The instruction stated:

> The presence in a motor vehicle of a knife shall be prima facie evidence that it is in the possession of all persons occupying such motor vehicle.
>
> Prima facie evidence means you may regard the basic fact as sufficient evidence of possession, but does not require you to do so. The evidence of the possession of a knife in the vehicle must be shown beyond a reasonable doubt.

The instruction was based on Neb. Rev. Stat. § 28-1212 (Reissue 2016), which provides:

> The presence in a motor vehicle other than a public vehicle of any firearm or instrument referred to in section 28-1203, 28-1206, 28-1207, or 28-1212.03 shall be prima facie evidence that it is in the possession of and is carried by all persons occupying such motor vehicle at the time such firearm or instrument is found, except that this section shall not be applicable if such firearm or instrument is found upon the person of one of the occupants therein.

At the jury instruction conference, Botts objected to the instruction, arguing that the purpose of § 28-1212 is to establish a benchmark for the State to overcome a motion for directed verdict and that the use of jury instruction No. 4 would violate Botts' right to the presumption of innocence and right to due process. The trial court overruled Botts' objection to the instruction, stating that based on case law, the jury should be given an instruction based on

§ 28-1212 as long as the instruction does not shift the burden of proof.

There have been several cases that have examined jury instructions based on § 28-1212. First, in *State v. Stalder*, 231 Neb. 896, 438 N.W.2d 498 (1989), the defendant was charged with and convicted of being a felon in possession of a firearm with a barrel less than 18 inches in length. At trial, the court gave a jury instruction based upon § 28-1212 which stated: "'The presence in a motor vehicle other than a public vehicle of any firearm or instrument . . . shall be prima facie evidence that it is in the possession of, and is carried by, all persons occupying such motor vehicle at the time such firearm or instrument is found . . . .'" *State v. Stalder*, 231 Neb. at 904, 438 N.W.2d at 504. The defendant argued on appeal that the trial court erred in giving the jury instruction because it was unconstitutional in that it forced him to establish his innocence. *State v. Stalder, supra*.

The *Stalder* court stated that when instructions are given as to presumptions in a criminal case, those instructions must conform to the requirements of Neb. Rev. Stat. § 27-303(3) (Reissue 1985), which provided, as it now provides:

> Whenever the existence of a presumed fact against the accused is submitted to the jury, the judge shall give an instruction that the law declares that the jury may regard the basic facts as sufficient evidence of the presumed fact but does not require it to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge shall instruct the jury that its existence must, on all the evidence, be proved beyond a reasonable doubt.

The *Stalder* court found the trial court's failure to follow the requirements of § 27-303(3) to be error, reversed the conviction, and remanded the cause for a new trial.

The Nebraska Supreme Court again examined a jury instruction based upon § 28-1212 in *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991). In *Jasper*, the defendant was

charged with and convicted of possession of a short shotgun.
At trial, the jury was given an instruction based on § 28-1212
which stated:

> "The presence in a motor vehicle of any firearm shall
> be prima facie evidence that it is in the possession of, and
> is carried by, all persons occupying such motor vehicle
> at the time such firearm is found, unless such firearm is
> found upon the person of one of the occupants.
>
> "Prima facie evidence is evidence sufficient in law to
> raise a presumption of fact or establish the fact in ques-
> tion unless rebutted.
>
> "You may accept any presumption raised by prima
> facie evidence, but you are not required to do so. The
> evidence of presence of the firearm in the vehicle must be
> shown beyond a reasonable doubt."

*State v. Jasper*, 237 Neb. at 756, 467 N.W.2d at 858.

On appeal, the defendant argued that the jury instruction
based on § 28-1212 deprived him of due process by relieving
the State of its burden to prove beyond a reasonable doubt each
element of the crime charged and by shifting to the defendant
the burden to disprove possession of the shotgun.

The court ruled that the instruction improperly shifted the
burden of persuasion to the defendant concerning the elements
of the crime, relieving the State of its burden. The court held
that the instruction deprived the defendant of a fair trial, as
required under the constitutional guarantee of due process,
and the conviction was set aside and the cause remanded for a
new trial.

The *Jasper* court stated that a jury instruction founded on
a presumption created by a statute was constitutionally imper-
missible because such instruction deprived a defendant of the
due process right requiring the State to prove beyond a reason-
able doubt each element of the crime charged and that such
instruction shifted the burden to the defendant to disprove the
element of intent in the offense charged. The court stated that
the defendant was not charged with "'presence in a vehicle

containing a short shotgun'" but was charged with actual possession. *State v. Jasper*, 237 Neb. at 763, 467 N.W.2d at 861. The court stated that based on mere presence of the firearm, there could be no constitutionally permissible instruction that the jury must infer the defendant's commission of the crime charged or any element of the crime charged. The defendant's due process right to a fair trial was violated by an instruction which required that the jury draw an inference adverse to the defendant. *State v. Jasper, supra.*

The *Jasper* court further stated that even if there had been a recognizable and constitutionally acceptable presumption available in the defendant's case, the trial court failed to specifically instruct the jury that possession, which was the presumed fact, "'must, on all the evidence, be proved beyond a reasonable doubt,'" as expressly required by § 27-303(3). 237 Neb. at 766, 467 N.W.2d at 863.

The third case that has examined a jury instruction based upon § 28-1212 is *State v. Blackson*, 1 Neb. App. 94, 487 N.W.2d 580 (1992). In *Blackson*, the defendant was charged with carrying a concealed weapon after officers found two guns in a car where the defendant had been a passenger. The jury was instructed:

> "The presence in a motor vehicle of any firearm shall be prima facie evidence that it is in the possession of, and is carried by, all persons occupying such motor vehicle at the time such firearm is found, unless such firearm is found upon the person of one of the occupants.
>
> "You may regard the basic facts as sufficient evidence of the presumed fact, but you are not required to do so. The presumed fact must, on all the evidence, be proved beyond a reasonable doubt."

*Id*. at 96, 487 N.W.2d at 582.

The *Blackson* court determined that the instruction, which created the presumption the concealed weapon "'is carried by'" a defendant, was similar to the instruction in *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991), and that the

holding in *Jasper* should be applied. 1 Neb. App. at 98, 487 N.W.2d at 583. It reversed the defendant's conviction and remanded the cause for a new trial.

The court in *Blackson* concluded that by giving the instruction on the presumption of § 28-1212 that all individuals in a motor vehicle are in possession of or are carrying any firearm found in that vehicle, the trial court in effect directed a verdict against the defendant. The court recognized that in giving the instruction, the trial court was quoting § 27-303(3), but concluded that in light of the Nebraska Supreme Court's decision in *Jasper*, it had to find that the instruction adversely affected a substantial right of the defendant. The court held that the instruction deprived the defendant of a due process right that the State must prove beyond a reasonable doubt each element of the crime charged and that the instruction shifted the burden to the defendant to disprove the element of the offense charged that the defendant was carrying a concealed weapon.

In summary, the Nebraska Supreme Court and this court have held that a jury instruction based on § 28-1212, that shifts the burden of proof to a defendant on any essential element of a crime charged, violates a defendant's due process right to a fair trial.

The trial court may have erred in giving jury instruction No. 4 in the present case as well. However, assuming without deciding that the trial court did err in giving jury instruction No. 4, we determine that it was harmless error based on the facts of this case. The evidence showed that after Botts was placed in Drager's cruiser, Botts made statements indicating that the machete belonged to him and that he knew it was in his vehicle. Specifically, he stated multiple times that he used the machete for his business. Botts also made statements indicating that the vehicle where the machete was found was his vehicle. Further, Botts was the only person with the vehicle, which the officers knew he had been driving earlier, and the machete was found under the driver's seat. We conclude that

if it was error to give jury instruction No. 4, which we do not decide here, the error was harmless based on the evidence presented in this case.

*Objections to Certain Testimony.*

Botts next assigns that the court erred by failing to sustain his objections to certain prejudicial and nonrelevant testimony presented by the State. Specifically, Botts takes issue with testimony by police officers about Botts' demeanor during the encounter and comments he made while the officers were trying to place him in handcuffs. Botts also takes issue with testimony that Botts had been stopped for a traffic stop earlier that evening by Tran and that he suspected Botts had been drinking alcohol. Three officers testified to Tran's suspicion during the earlier contact that Botts had been drinking as the reason the officers approached Botts a second time, and that is when Botts became upset. Botts objected to the testimony about the earlier traffic stop based on relevancy and to the testimony about his demeanor based on relevancy and unfair prejudice. The court overruled the objections.

The general rule is that only relevant evidence is admissible. See Neb. Rev. Stat. § 27-402 (Reissue 2016). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Neb. Rev. Stat. § 27-401 (Reissue 2016).

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Neb. Rev. Stat. § 27-403 (Reissue 2016).

Botts argues that the only relevant matter for the jury's consideration was whether Botts had been convicted of a felony and whether he possessed a knife on the date in question. He

contends that how he reacted, his demeanor, and statements he made to the officers, as well as information regarding the earlier traffic stop, did not make the existence of any fact that is of consequence to the determination of whether he was a convicted felon that possessed a knife more probable or less probable than it would be without the evidence. He contends the testimony did not help the jury determine the elements of the crime charged, but, rather, was prejudicial and was an attempt to place Botts in a negative light.

We determine that the trial court did not err in overruling Botts' objections on relevance and unfair prejudice grounds. Evidence regarding the earlier traffic stop was relevant to establishing Botts as the driver and person in control of the vehicle, making it more likely that he possessed the machete found under the driver's seat. Also, such evidence provided context for why the officers made the decision to approach Botts. Evidence regarding Botts' demeanor was relevant in that it also provided context and a complete picture of the circumstances at the time. Further, the probative value of the complained of testimony was not substantially outweighed by the danger of unfair prejudice. This assignment of error is without merit.

*Sufficiency of Evidence.*

Botts asserts there was insufficient evidence to support his conviction for possession of a knife by a felon. Neb. Rev. Stat. § 28-1206 (Reissue 2016) provides that any person who possesses a knife and who has been previously convicted of a felony commits the offense of possession of a deadly weapon by a prohibited person. First, the parties stipulated that Botts had a prior felony conviction. Second, the machete qualified as a "[k]nife" under Neb. Rev. Stat. § 28-1201(5) (Reissue 2016). Third, there was evidence that Botts possessed the machete. After being placed in the cruiser, Botts repeatedly claimed that the machete was his and that he used it for his business. In addition, Botts was the only person with the vehicle, which the

officers knew he had been driving earlier, and the machete was found under the driver's seat.

We conclude that there was sufficient evidence adduced at trial to sustain Botts' conviction for possession of a knife by a felon.

## CONCLUSION

We conclude that if there was any error by the court in giving jury instruction No. 4, it was harmless error. We further conclude that the court did not err in overruling objections to certain testimony raised by Botts and that the evidence was sufficient to support a guilty verdict. Accordingly, Botts' conviction and sentence are affirmed.

Affirmed.