Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/11/2021 08:12 AM CDT

**State of Nebraska, appellee, v.
Jeremiah Warlick, appellant.**
___ N.W.2d ___

Filed March 19, 2021.    No. S-19-1137.

1. **Judgments: Jurisdiction: Appeal and Error.** The determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires the appellate court to reach its conclusion independent from the trial court; however, when the determination rests on factual findings, the trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect.
2. **Right to Counsel: Waiver: Appeal and Error.** In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a clearly erroneous standard of review.
3. **Trial: Waiver.** Whether a defendant could and, in fact, did waive his or her right to attend all stages of his or her trial presents a question of law.
4. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
5. **Rules of Evidence: Appeal and Error.** In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence.
6. **Venue.** Venue is the place where a court's inherent power to adjudicate may be exercised.
7. **Criminal Law: Venue: Jurisdiction: Waiver: Proof.** In a criminal case, proper venue is a jurisdictional fact that, in the absence of a defendant's waiver by requesting a change of venue, the State has the burden of proving beyond a reasonable doubt.

8. **Criminal Law: Venue: Proof.** The State may prove venue like any other fact in a criminal case. It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient.

9. **Venue.** The venue statutes do not make the place of arrest a circumstance of venue.

10. \_\_\_\_. Neb. Rev. Stat. § 29-215 (Reissue 2016) is not a venue statute.

11. **Constitutional Law: Criminal Law: Sentences: Right to Counsel.** An accused has a state and federal constitutional right to be represented by an attorney in all critical stages of a criminal prosecution which can lead to a sentence of confinement.

12. **Right to Counsel.** If an indigent defendant is to be imprisoned upon conviction, he or she has a right to court-appointed counsel at trial, regardless of whether the offense for which he or she may be imprisoned is classified as petty, misdemeanor, or felony.

13. **Criminal Law: Right to Counsel.** An indigent defendant who refuses to accept offered counsel without justifiable reason and elects to proceed pro se has not been deprived of his or her constitutional right to counsel.

14. **Constitutional Law: Right to Counsel: Waiver.** In order to exercise the right of self-representation, a defendant must first make a knowing and intelligent waiver of the right to counsel.

15. **Right to Counsel: Waiver.** Formal warnings do not have to be given by the trial court to establish a knowing, voluntary, and intelligent waiver of the right to counsel.

16. \_\_\_\_: \_\_\_\_. In determining whether there has been a knowing and voluntary waiver of the right to counsel, the key inquiry is whether the defendant was sufficiently aware of the right to have counsel and of the possible consequences of a decision to forgo the aid of counsel.

17. **Right to Counsel: Motions for Continuance.** There must be a balance between a defendant's right to counsel and the court's discretionary powers to control the progression of a case, including granting or denying continuances.

18. **Criminal Law: Right to Counsel.** Defendants need not be advised of the right to counsel at every stage of the criminal proceedings.

19. **Right to Counsel: Pretrial Procedure.** A defendant's knowledge during pretrial proceedings of a right to counsel does not simply vanish by the date of the trial.

20. **Constitutional Law: Right to Counsel: Trial.** When a pro se defendant absents himself or herself from the pro se defendant's trial of his or her own volition, a trial judge is not constitutionally required to appoint counsel to represent the absent defendant.

21. **Constitutional Law: Trial: Witnesses.** The Confrontation Clause of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, provide for the accused's right to be present in the courtroom at every stage of the trial.

22. **Constitutional Law: Trial: Waiver.** A defendant's right to be present at trial may be waived, but any waiver of this right must be knowing and voluntary.

23. **Constitutional Law: Trial.** It is the duty of the court to have a defendant who is in custody brought into court when any proceeding connected with the trial of the case is taken.

24. **Constitutional Law: Trial: Bailment: Waiver.** It is the duty of a defendant out on bail to attend the sessions of the court, and the failure to do so constitutes voluntary absence on the defendant's part and a waiver of the defendant's right to be present.

25. ____: ____: ____: ____. It is the duty of a defendant out on bail to continue to be present after a trial recess, and the defendant's failure to do so constitutes voluntary absence on the defendant's part and a waiver of the defendant's right to be present.

26. **Waiver: Words and Phrases.** A waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct.

27. **Constitutional Law: Trial.** While a court should make a reasonable effort to secure the presence of a defendant at any proceeding during the trial, if a defendant could prevent the completion of the trial by voluntarily absenting himself or herself, and thus tie the hands of justice, the defendant would be permitted to take advantage of his or her own wrong.

28. **Constitutional Law: Trial: Evidence: Waiver: Appeal and Error.** In determining on direct appeal whether a defendant has waived the right to be present, an appellate court does not merely look to the evidence available at the moment the court pronounced the defendant's absence to be voluntary, but at the entirety of the evidence in the record.

29. **Trial: Bailment: Evidence: Proof: Appeal and Error.** An appellate court applies to a defendant, who was out on bail and has failed without explanation to be present at trial, the fundamental proposition that the burden to produce evidence will rest upon the party who possesses positive and complete knowledge concerning the existence of facts which the other party would otherwise be called upon to negative, or if the evidence to prove a fact is chiefly within the party's control.

30. **Evidence: Appeal and Error.** The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

31. **Convictions.** A conviction cannot be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which the accused finds himself or herself, or the mere fact that some unfavorable circumstances are not satisfactorily explained.

32. **Convictions: Evidence.** A criminal conviction may soundly be based solely on circumstantial evidence.

33. ____: ____. A conviction may be based on circumstantial evidence regardless of whether the inferences of guilt of each line of circumstantial proof are stronger than the inferences of nonguilt. The circumstantial evidence, like direct evidence, is considered as an interrelated whole.

34. **Words and Phrases.** Actual possession is synonymous with physical possession.

35. **Evidence: Proof: Intent.** Constructive possession may be proved by mere ownership, dominion, or control over contraband itself, coupled with the intent to exercise control over the same.

36. **Controlled Substances.** Under the criminal narcotics statutes, possession may be either actual or constructive.

37. **Evidence.** Two persons may have constructive possession, or one may have actual possession and the other have constructive possession.

38. **Evidence: Proof.** Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it.

39. **Controlled Substances.** Possession of a controlled substance means either (1) knowingly having it on one's person or (2) knowing of the substance's presence and having control over the substance.

40. **Evidence: Proof.** Mere presence at a place where the item in question is found is not sufficient to show constructive possession.

41. **Controlled Substances: Motor Vehicles: Evidence.** Possession of an illegal substance can be inferred from a vehicle passenger's proximity to the substance or other circumstantial evidence that affirmatively links the passenger to the substance.

42. **Controlled Substances: Evidence: Proof.** Evidence that a defendant had constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession and to sustain a conviction for unlawful possession.

43. **Investigative Stops: Motor Vehicles: Controlled Substances: Evidence.** A passenger's joint possession of a controlled substance found in a motor vehicle can be established by evidence that (1) supports an inference that the driver was involved in drug trafficking, as distinguished from possessing illegal drugs for personal use; (2) shows the passenger acted suspiciously during a traffic stop; and (3) shows the

passenger was not a casual occupant but someone who had been traveling a considerable distance with the driver.

44. **Investigative Stops: Motor Vehicles: Controlled Substances.** A finder of fact may reasonably infer that a driver with a possessory interest in a vehicle who is transporting a large quantity of illegal drugs would not invite a passenger into the vehicle unless the passenger knew of the valuable cargo contained therein and was conscious of the risks and ramifications involved with transporting it.

45. ____: ____: ____. Possession of a controlled substance can be inferred if the vehicle's occupant acts oddly during the traffic stop, gives explanations that are inconsistent with the explanations of other occupants of the vehicle, or generally gives an implausible explanation for the travels.

46. **Controlled Substances: Motor Vehicles.** In order to support a reasonable inference of constructive possession, the illegal substance need not be of such proximity to the passenger of a vehicle as to be conveniently accessed or within immediate physical reach.

47. **Weapons: Evidence: Proof.** Constructive possession does not establish the elements of Neb. Rev. Stat. § 28-1202 (Reissue 2016) of "carr[ying]" a concealed weapon "on or about his or her person."

48. **Criminal Law: Statutes.** A penal statute is to be strictly construed in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.

49. **Weapons.** Neb. Rev. Stat. § 28-1202 (Reissue 2016) plainly limits the place of the weapon's concealment to on or about his or her person.

50. **Weapons: Motor Vehicles.** A weapon is concealed on or about the person if it is concealed in such proximity to the passenger of a motor vehicle as to be convenient of access and within immediate physical reach.

51. **Convictions: Presumptions: Right to Counsel: Waiver: Proof.** Any conviction after *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963), is entitled to a presumption of regularity, such that once the government establishes the existence of a prior conviction, it becomes the defendant's burden to prove that he or she did not have counsel and did not waive the right to counsel at the time of conviction.

Appeal from the District Court for York County: James C. Stecker, Judge. Affirmed in part, and in part reversed and remanded with directions.

Kevin V. Schlender for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## I. NATURE OF CASE

In an appeal from several convictions relating to illegal firearm possession and controlled substance charges, the defendant challenges venue, the commencement of trial while the defendant was not represented by counsel, the proceeding with trial after he failed to return to court following a noon recess, and the sufficiency of evidence to support the convictions.

## II. BACKGROUND

Following a bench trial in the York County District Court, Jeremiah Warlick was convicted of (1) possession of a controlled substance, marijuana, with intent to distribute, in violation of Neb. Rev. Stat. § 28-416 (Cum. Supp. 2020); (2) possession of a controlled substance, marijuana weighing more than 1 pound, in violation of § 28-416; (3) failing to obtain a drug tax stamp, in violation of Neb. Rev. Stat. §§ 77-4302 and 77-4309 (Reissue 2018); (4) possession of a firearm during the commission of a felony, in violation of Neb. Rev. Stat. § 28-1205 (Reissue 2016); (5) possession of a deadly weapon by a prohibited person, in violation of Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2018); (6) possession of a stolen firearm, in violation of Neb. Rev. Stat. § 28-1212.03 (Reissue 2016); and (7) carrying a concealed weapon, in violation of Neb. Rev. Stat. § 28-1202 (Reissue 2016). Warlick's convictions arose from a traffic stop on July 26, 2018, of a vehicle in which Warlick was a front seat passenger.

### 1. Pretrial Hearings

Warlick was first advised of his right to counsel, including his potential right to appointed counsel, on August 29, 2018, in county court. The matter was bound over to district court,

where the journal entry reflects that Warlick was advised of "all possible penalties and rights," and the bill of exceptions reflects that Warlick, in response to the court's inquiry, stated he had no questions as to the advisement of his statutory and constitutional rights. The court also determined that Warlick did not suffer from any condition that would affect his ability to understand the proceedings. Representing himself pro se, Warlick filed a motion to dismiss, arguing that the officer who stopped his vehicle committed perjury and that the officer initiated the stop outside of York County, without requesting permission from Seward County authorities, which resulted in the officer's having no power to enforce the law outside of York County. Arraignment and a hearing on the motion was continued until November 13.

At the hearing on November 13, 2018, Warlick again appeared without counsel. The district court asked Warlick if he intended to either hire counsel or request that counsel be appointed to him. Warlick answered, "No." The court then asked Warlick if he was waiving his right to counsel, to which Warlick responded, "Yes." The court asked Warlick, "Has anyone made any threats, promises, or forced you to get you to waive your right to counsel?" Warlick answered, "No, sir." The court then found that Warlick freely, voluntarily, knowingly, and intelligently waived his right to counsel. Warlick also waived his right to a jury trial. The court denied Warlick's motion to dismiss.

After the arraignment hearing, Warlick filed a motion to quash the bindover, alleging that the York County District Court had no jurisdiction over the offenses charged and no jurisdiction over Warlick and that "[t]he officer who filed the information had no authority to do so." The State filed a motion to consolidate Warlick's case with the case brought against the driver of the vehicle, Denarro Clark. These motions were taken up at the pretrial hearing on January 29, 2019. The court granted the motion to consolidate, indicating that since this would be a bench trial, the court would be able to keep

the evidence separate. The court denied Warlick's motion to quash the bindover.

After the pretrial hearing, Warlick filed a "Motion for Extension of Time" on February 11, 2019, asking the court to continue the date for trial 120 days to allow him to find representation and stating that "[t]his will give time to properly prepare for trial." The court granted Warlick a continuance for an unspecified amount of time, but set a status hearing for March 11.

Warlick appeared at the March 11, 2019, status hearing still without counsel. Warlick indicated he had not signed any contracts yet, but was "looking to do something" for the next hearing. The court asked if Warlick was going to hire counsel on his own or intended to ask for court-appointed counsel, and Warlick responded, "On my own."

The court scheduled trial to begin April 24, 2019, and told Warlick that if he did not have counsel by then, "we'll proceed without counsel." Warlick indicated he understood. Throughout the pretrial hearings and up to trial, Warlick was at liberty after being released on bail.

### 2. Trial

The consolidated bench trial of Warlick and Clark was held on April 24, 2019. Both Warlick and Clark appeared without counsel. When the court asked Warlick if he was ready to proceed to trial, he responded, "No, I'm not ready to proceed at all." But neither Warlick nor Clark objected to the trial beginning at that time or asked for a continuance.

At trial, before calling its first witness, the State offered exhibits 14 and 15, which were certified copies of statements of conviction from Cook County, Illinois.

Exhibit 14 is evidence of a plea-based conviction in Illinois on October 25, 2017, of "FELON POSS/USE FIREARM/ PAROLE" and "FELON POSS/USE FIREARM PRIOR," in violation of "720-5/24-1.1(A)." The certified statement of conviction indicates that there was a motion to withdraw as attorney filed on June 30, 2016, and an appearance, possibly

by a different attorney, filed on July 26, but there is no indication that Warlick proceeded pro se or was not represented by counsel at the time he pled guilty.

Exhibit 15 is evidence of plea-based convictions in Illinois on June 10, 2010, of "AGG VEH HIJACKING/WEAPON," in violation of "720-5/18-4(a)(3)"; "BURGLARY," in violation of "720-5/19-1(a)"; and "AGGRAVATED UNLAWFUL RESTRAINT," in violation of "720-5/10-3.1(a)." The certified statement of conviction describes that Warlick was appointed a public defender on June 16, 2009, and there is no indication that counsel sought to withdraw or that Warlick proceeded pro se at any time before he entered his pleas.

The State argued that the exhibits established that Warlick was a convicted felon for purposes of the possession of a firearm by a prohibited person charge. The court overruled Warlick's relevancy objection to the exhibits.

The State then presented testimony from the York County sheriff's deputy who conducted the traffic stop of the vehicle. The deputy testified that he observed a vehicle traveling eastbound near mile marker 348 on Interstate 80 in York County with no front license plate and an obstructed rear license plate to the point he could not see the state in which the license plate was issued. Due to heavy traffic, he was not able to catch up to the vehicle and activate his patrol car's overhead emergency lights until mile marker 364, in York County. The deputy stated that the vehicle crossed the county line and came to a stop approximately a quarter mile to a half mile into Seward County, just west of mile marker 366.

After making contact, the deputy identified the driver of the vehicle as Clark and the front seat passenger as Warlick by their respective Indiana and Illinois driver's licenses. Once the deputy had advised Clark of the traffic violation and got his information, he asked Clark to accompany him to his patrol car while he issued Clark a written warning.

The deputy testified that Clark told him Warlick was his cousin and that the purpose of his trip was to go gambling in Las Vegas, Nevada. The deputy stated that "when asking

[Clark] questions, he seemed to pause, think about his answer before answering." The deputy testified that Warlick provided a different story, telling him that Warlick and Clark had made a trip to California, and Warlick never mentioned gambling or a trip to Las Vegas. A criminal history check on both Warlick and Clark indicated that both had prior weapons convictions, to which Clark had admitted. Based on a suspicion that criminal activity was afoot, the deputy issued Clark a written warning and then asked him for consent to search his vehicle. Clark agreed.

Upon a search of the vehicle, the deputy discovered underneath the spare tire in the cargo area of the vehicle four bundles of marijuana that were wrapped multiple times in plastic wrap and tinfoil with a "masking agent" between each layer. The deputy testified that a "masking agent . . . is common practice to defeat a police service dog" and indicated to him that somebody would have knowingly done this to evade detection. Along with the marijuana, the deputy also found a drawstring bag located in the same area as the marijuana, which contained a handgun, an extended magazine for the handgun, and some hair product. The deputy testified that the marijuana and handgun were accessible from the back seat of the vehicle.

The deputy testified that 4 pounds of marijuana were seized and that based on his training and experience, this amount is consistent with distribution rather than personal use. Also, there was no drug tax stamp located on any of the marijuana seized. The deputy further testified that when the serial number on the handgun was entered into law enforcement databases, a "confirmation hit" was received, indicating that the firearm had been reported as stolen in Illinois. The deputy also pointed out Clark had told him that he was a barber. Subsequent research by the deputy confirmed his suspicion that the hair product located with the firearm was the type commonly used in barber shops. Warlick and Clark were placed under arrest.

During the deputy's testimony, he stated that the traffic stop was initiated in York County, but the vehicle did not come

to a stop until approximately a quarter mile to a half mile into Seward County, where the search of the vehicle occurred. During cross-examination, the deputy testified to an error in his affidavit stating that the arrest was made in York County. The deputy stated that a template was used for his report and that "[b]asically we change the name, date and time and the charges." And since this was an "unusual circumstance" where it crossed county lines, "the location, York, Nebraska, usually does not change, and it was something that was overlooked at the time."

While Clark was in the process of cross-examining the deputy, the court called a noon recess and said the trial would resume at 1:15 p.m. At 1:50 p.m., the court returned on the record, in Warlick's absence. The court stated, "Both . . . Clark and . . . Warlick are absent. They were told to return for trial at 1:15. They have failed to appear. They voluntarily absence themselves."

The court then allowed the State to continue with the trial. The State presented the testimony of a forensic scientist from the Nebraska State Patrol Crime Laboratory. He testified that the test of the suspected marijuana from Warlick and Clark's vehicle confirmed that it was in fact marijuana and weighed in excess of 1 pound.

The State rested its case and offered closing arguments. Thereafter, the court found Warlick guilty beyond a reasonable doubt on all seven counts. The court issued a bench warrant for Warlick's arrest and set a date for sentencing.

### 3. Posttrial Hearings
### and Sentencing

On July 8, 2019, Warlick appeared with counsel. Warlick had filed on May 3 a motion for new trial and on June 11 a motion to continue the hearing on the motion for new trial for 60 days. The court granted the motion to continue in order for Warlick to get a transcript prepared.

Warlick's motion for new trial asserted that there was an irregularity in the proceedings and orders of the court, there

was an abuse of discretion that prevented Warlick from having a fair trial, Warlick's "substantial rights" were materially affected, the verdicts were not sustained by sufficient evidence, and an error of law occurred at trial. At the hearing on the motion for new trial, Warlick's counsel argued that since the vehicle belonged to Clark, the vehicle was driven by Clark, and the handgun recovered was found in a bag that belonged to Clark, Warlick's presence as a passenger did not link him to the items or make him guilty of possession of those items. Counsel for Warlick also argued that the court granted a 120-day continuance, but went to trial without counsel before the 120 days were past, and that Warlick did not knowingly and intelligently waive counsel at trial. The court entered an order denying the motion for new trial.

Warlick again appeared with counsel at his sentencing hearing. No explanation was ever offered on the record as to any reason for Warlick's disappearance during his trial.

Warlick was sentenced to 1 to 2 years' imprisonment on count 1, possession of a controlled substance with intent to distribute; 1 to 2 years' imprisonment on count 3, no drug tax stamp; 1 to 2 years' imprisonment on count 4, possession of a deadly weapon during the commission of a felony; 3 to 5 years' imprisonment on count 5, possession of a deadly weapon by a prohibited person; 1 to 2 years' imprisonment on count 6, possession of a stolen firearm; and no more than 1 year's imprisonment on count 7, carrying a concealed weapon. However, the court found that sentencing Warlick on both count 1 and count 2 would equate to double jeopardy. Therefore, it did not impose a sentence for count 2. Count 4 was ordered to be served consecutively to counts 1, 3, 5, 6, and 7, which were to be served concurrently to one another. In the aggregate, Warlick was sentenced to 4 to 7 years' imprisonment and received credit for time served of 159 days.

## III. ASSIGNMENTS OF ERROR

Warlick assigns, renumbered and reworded, that the trial court erred in (1) proceeding with trial without appointing

an attorney or standby counsel for Warlick, (2) continuing with trial in Warlick's absence and without counsel, (3) finding exhibits 14 and 15 sufficient to establish prior felony convictions because the exhibits failed to show that Warlick was represented by counsel or had waived counsel at the time of the convictions and sentencing, (4) finding sufficient evidence to convict Warlick, and (5) finding Warlick guilty when the trial court lacked jurisdiction due to improper venue.

## IV. STANDARD OF REVIEW

[1] The determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires the appellate court to reach its conclusion independent from the trial court; however, when the determination rests on factual findings, the trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect.[1]

[2] In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a clearly erroneous standard of review.[2]

[3] Whether a defendant could and, in fact, did waive his or her right to attend all stages of his or her trial presents a question of law.[3]

[4] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

[5] In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by such rules,

---

[1] *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997).

[2] *State v. Figeroa*, 278 Neb. 98, 767 N.W.2d 775 (2009), *overruled in part on other grounds, State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018).

[3] *State v. Fox*, 282 Neb. 957, 806 N.W.2d 883 (2011).

[4] *State v. Vann*, 306 Neb. 91, 944 N.W.2d 503 (2020).

not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence.[5]

## V. ANALYSIS

Warlick asserts that the York County District Court was the wrong venue in which to bring the charges against him. Warlick also argues that the district court violated his right to be present and his right to counsel when it commenced trial with Warlick's representing himself pro se and when it continued with the trial after Warlick failed to reappear following the noon recess. Finally, Warlick attacks the sufficiency of the evidence to support his convictions, arguing that the evidence failed to establish his possession of the marijuana and the handgun and that exhibits 14 and 15 do not establish the element of being a felon for the felon in possession conviction, because they do not demonstrate that any prior felony conviction was counseled.

### 1. Venue

[6,7] We first address Warlick's argument that the district court for York County lacked venue. Venue is the place where a court's inherent power to adjudicate may be exercised.[6] Article I, § 11, of the Nebraska Constitution describes that an accused shall have the right to a "speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed," and venue is further controlled by statute, principally by Neb. Rev. Stat. § 29-1301 (Reissue 2016). In a criminal case, proper venue is a jurisdictional fact[7] that, in the absence of a defendant's waiver

---

[5] *State v. Castor*, 257 Neb. 572, 599 N.W.2d 201 (1999).

[6] See, *State v. Gorman*, 232 Neb. 738, 441 N.W.2d 896 (1989); *State v. Vejvoda*, 231 Neb. 668, 438 N.W.2d 461 (1989).

[7] *State v. Laflin*, 201 Neb. 824, 272 N.W.2d 376 (1978); State *v. Liberator*, 197 Neb. 857, 251 N.W.2d 709 (1977); *Gates v. State*, 160 Neb. 722, 71 N.W.2d 460 (1955); *Robeen v. State*, 144 Neb. 910, 15 N.W.2d 69 (1944).

by requesting a change of venue, the State has the burden of proving beyond a reasonable doubt.[8]

[8] The State may prove venue like any other fact in a criminal case.[9] It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient.[10]

Section 29-1301 provides that the defendant has a right, except as otherwise provided in Neb. Rev. Stat. §§ 25-412.03 and 29-1301.01 to 29-1301.03 (Reissue 2016), or unless it shall appear to the court by affidavits that a fair and impartial trial cannot be had therein, to be tried in the county in which the criminal offense is alleged to have been committed.

Section 29-1301.02 is applicable to the facts of this case. It provides in relevant part:

When an offense is committed in this state, . . . on a . . . motor vehicle . . . , the accused may be tried in any county through, on, or over which the . . . motor vehicle . . . passes in the course of its voyage or trip, or in the county in which the voyage or trip terminates.

Warlick does not challenge the constitutionality of § 29-1301.02.

The State presented evidence that the motor vehicle Warlick was a passenger of, which contained marijuana and a handgun, passed through York County. The deputy who arrested Warlick testified that he first observed Clark's vehicle when it was traveling eastbound on Interstate 80 in York County with no front license plate and an obstructed rear license plate. Based on this traffic violation, the deputy initiated a traffic stop in York County by activating his patrol car's emergency lights. Thus, there was evidence from which the trier of fact could

---

[8] See, *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018); *Peterson v. Houston*, 284 Neb. 861, 824 N.W.2d 26 (2012); State *v. Laflin, supra* note 7. See, also, *State v. Vejvoda, supra* note 6.

[9] *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010).

[10] *Id.*

find beyond a reasonable doubt that, pursuant to § 29-1301.02, the York County District Court was a proper venue for bringing the criminal action against Warlick.

[9,10] Warlick's focus on the county where he was arrested is misplaced. Nowhere in the venue statutes does the Legislature make the place of arrest a circumstance of venue. Warlick asserts that the arresting deputy was outside of his primary jurisdiction and was not in "a fresh attempt to apprehend" the vehicle, as described by Neb. Rev. Stat. § 29-215(2)(a) (Reissue 2016), when Warlick was detained and arrested. Section 29-215 defines the jurisdiction and powers of law enforcement officers.[11] Section 29-215 is not a venue statute. Warlick did not challenge the evidence obtained from the stop and arrest as illegally obtained in violation of § 29-215,[12] and it has no applicability to his assignment of error challenging venue.

## 2. Right to Counsel

[11-13] Having determined that the York County District Court was a proper venue, we next consider Warlick's assertion that the district court erred by commencing the trial without appointing him counsel or standby counsel. An accused has a state and federal constitutional right to be represented by an attorney in all critical stages of a criminal prosecution which can lead to a sentence of confinement.[13] The same constitutional provisions also guarantee the right of an accused to self-representation.[14] Finally, these provisions guarantee that if an indigent defendant is to be imprisoned upon conviction, he or she has a right to court-appointed counsel at trial, regardless of whether the offense for which he or she may be

---

[11] *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006).

[12] See, e.g., *State v. Cuny*, 257 Neb. 168, 595 N.W.2d 899 (1999).

[13] U.S. Const. amend. VI and XIV; Neb. Const. art. 1, § 11; *Scott v. Illinois*, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979); *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997).

[14] See *State v. Wilson, supra* note 13.

imprisoned is classified as petty, misdemeanor, or felony.[15] But an indigent defendant who refuses to accept offered counsel without justifiable reason and elects to proceed pro se has not been deprived of his or her constitutional right to counsel.[16]

[14-16] In order to exercise the right of self-representation, a defendant must first make a knowing and intelligent waiver of the right to counsel.[17] Formal warnings do not have to be given by the trial court to establish a knowing, voluntary, and intelligent waiver of the right to counsel, however.[18] In determining whether there has been a knowing and voluntary waiver of the right to counsel, the key inquiry is whether the defendant was sufficiently aware of the right to have counsel and of the possible consequences of a decision to forgo the aid of counsel.[19] In determining whether a defendant's waiver of counsel was voluntary, knowing, and intelligent, an appellate court applies a clearly erroneous standard of review.[20]

Warlick concedes he voluntarily, knowingly, and intelligently waived his right to counsel at his initial arraignment. Nevertheless, Warlick asserts that when he moved for an extension of time to find private counsel, "it became apparent that [Warlick] no longer wished to waive his right to counsel" and instead expressed that he would be hiring private counsel.[21]

While Warlick points out that he was given less time than he requested to find his own counsel, he does not assign as error the court's failure to give him the full 120 days he had requested. Nor does Warlick argue that the 72 days given by the court was an unreasonable amount of time in which to

---

[15] See *State v. Green*, 238 Neb. 492, 471 N.W.2d 413 (1991).

[16] See *State v. Blunt*, 197 Neb. 82, 246 N.W.2d 727 (1976).

[17] *State v. Wilson,* supra note 13.

[18] *State v. Figeroa, supra* note 2.

[19] *State v. Wilson, supra* note 13.

[20] *State v. Figeroa, supra* note 2.

[21] Brief for appellant at 27.

find counsel.[22] At the March 11, 2019, status hearing, when the court stated it would proceed with the trial scheduled for April 24 without counsel if he did not have counsel by then, Warlick did not object or move for a further continuance.

[17] There must be a balance between a defendant's right to counsel and the court's discretionary powers to control the progression of a case, including granting or denying continuances.[23] Warlick failed to properly preserve and present the question of whether that balance was properly struck in this case. Nevertheless, we observe that there is nothing in the record explaining why 2½ months was an insufficient period of time for Warlick to secure his own counsel. Further, Warlick points to no law in support of his premise that it was the district court's duty on the day of trial, when Warlick appeared without the counsel he had said he intended to procure, "to inquire into the circumstances of his hiring an attorney."[24]

Warlick's assignment of error is that the district court erred by proceeding with trial without appointing, sua sponte, an attorney or standby counsel for him—or at least inquiring anew on the date of trial whether Warlick wanted a court-appointed attorney or standby counsel and, if not, determining anew that Warlick had voluntarily, knowingly, and intelligently waived his right to counsel.

[18,19] To the extent Warlick is asserting that the court erred in failing to give him a new advisement, we have held that defendants need not be advised of the right to counsel at every stage of the criminal proceedings.[25] Though a new

---

[22] See, *U.S. v. Leveto*, 540 F.3d 200 (3d Cir. 2008); *U.S. v. Merchant*, 992 F.2d 1091 (10th Cir. 1993); *United States v. Solina*, 733 F.2d 1208 (7th Cir. 1984); *United States v. Leavitt*, 608 F.2d 1290 (9th Cir. 1979); *People v. Lawrence*, 46 Cal. 4th 186, 205 P.3d 1062, 92 Cal. Rptr. 3d 613 (2009); *People v. Gibson*, 2017 IL APP (1st) 143566, 91 N.E.3d 398, 418 Ill. Dec. 697 (2017); *State v. Eddy*, 68 A.3d 1089 (R.I. 2013).

[23] See *United States v. Leavitt, supra* note 22.

[24] Brief for appellant at 27.

[25] See *State v. Paul*, 256 Neb. 669, 592 N.W.2d 148 (1999).

advisement may be required at sentencing despite a prior waiver,[26] Warlick was represented by counsel at sentencing. In conceding that he voluntarily, knowingly, and intelligently waived his right to counsel at the arraignment, Warlick necessarily concedes that he was sufficiently aware of the right to counsel and of the possible consequences of a decision to forgo the aid of counsel at that time.[27] A defendant's knowledge during pretrial proceedings of a right to counsel does not simply vanish by the date of the trial. The trial court's failure to re-advise Warlick on April 24, 2019, of his right to counsel was not reversible error and did not render any waiver by Warlick as unknowing.

Warlick's argument that the court should have sua sponte appointed him counsel or standby counsel likewise lacks merit. First, the right to appointed counsel is only for someone who is indigent,[28] and though Warlick was ultimately allowed to proceed with his appeal in forma pauperis, Warlick does not assert he was indigent at the time of trial. Likewise, there was no finding below of indigency for purposes of appointment of counsel.

Second, Warlick repeatedly expressed that he did not want appointed counsel. The court advised Warlick at two bond review hearings and at his arraignment of the right to proceed with appointed counsel upon a showing of indigency. At the hearing on November 13, 2018, Warlick stated he did not intend to request that counsel be appointed to represent him and was waiving the right to counsel. At the hearing on March 11, 2019, Warlick stated he was hiring counsel, but reiterated that he did not intend to ask for court-appointed counsel. At the March 11 hearing, Warlick stated he understood that the court would proceed with trial without counsel if he had

---

[26] See *id.*

[27] See *State v. Dean*, 246 Neb. 869, 523 N.W.2d 681 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

[28] See *State v. Green, supra* note 15.

not hired counsel by that time, and Warlick made no objection to that plan.

Thus, while during the course of the pretrial proceedings Warlick expressed he was no longer electing to represent himself pro se, at no point did Warlick withdraw his repeated waiver of the right to pursue appointed counsel in the event he was indigent. Warlick instead represented that he would hire private counsel. The court was under no obligation to delay trial indefinitely until such counsel was secured or to arrange, sua sponte, standby counsel to represent Warlick so as to prepare for a possibility that Warlick would not hire private counsel before the trial commenced. Assuming Warlick had a right to appointed counsel, he waived that right. We find no merit to Warlick's argument that the court was obligated to conduct another waiver colloquy before proceeding with the trial on April 24, 2019.

[20] Lastly, inasmuch as Warlick argues that he had a right to appointed counsel by virtue of his unexplained absence after the noon recess, we agree with those courts that hold that when a pro se defendant absents himself or herself from the pro se defendant's trial of his or her own volition, a trial judge is not constitutionally required to appoint counsel to represent the absent defendant.[29] Doing so, in effect, interferes with the defendant's choices in the exercise of self-representation.[30] As we will discuss next, the record demonstrates that Warlick absented himself from his trial of his own volition.

### 3. Right to Be Present

[21,22] The Confrontation Clause of the Sixth Amendment to the U.S. Constitution and Neb. Const. art. I, § 11, provide

---

[29] See, *Torres v. U.S.*, 140 F.3d 392 (2d Cir. 1998); *People v. Parento*, 235 Cal. App. 3d 1378, 1 Cal. Rptr. 2d 444 (1991); *People v. Brante*, 232 P.3d 204 (Colo. App. 2009); *State v. Worthy*, 583 N.W.2d 270 (Minn. 1998); *State v. Lacey*, 364 Or. 171, 431 P.3d 400 (2018); *State v. Eddy, supra* note 22.

[30] See *State v. Eddy, supra* note 22.

for the accused's right to be present in the courtroom at every stage of the trial.[31] Neb. Rev. Stat. § 29-2001 (Cum. Supp. 2020) provides in part: "No person indicted for a felony shall be tried unless personally present during the trial." A defendant's right to be present at trial may be waived, but any waiver of this right must be knowing and voluntary.[32] Whether a defendant could and, in fact, did waive his or her right to attend all stages of his or her trial presents a question of law.[33]

Similar to his arguments concerning the right to counsel, Warlick does not assert that he did not know of his right to be present at trial. Neither does Warlick exactly argue that his absence from trial was involuntary, though he focuses more on that element.

Warlick assigns that the district court erred in proceeding with the trial in his "absence and without counsel, and without a knowing and intelligent waiver of appearance" and argues that the trial court erred by failing to continue trial and follow certain procedures to attempt to determine the cause of his disappearance. According to Warlick, because the court did not follow such procedures, "[t]here was absolutely no evidence presented which would support a finding that [Warlick] knowingly and voluntarily waived his presence at trial . . . ."[34] We disagree.

Warlick asserts that the district court should have followed the example of the trial court in *State v. Zlomke*,[35] which, after the defendant's disappearance, had continued the trial for several days so that law enforcement would have time to attempt to locate the missing defendant, contact friends and family to attempt to determine the defendant's whereabouts,

---

[31] See, *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *State v. Fox, supra* note 3.

[32] See *State v. Red Kettle*, 239 Neb. 317, 476 N.W.2d 220 (1991).

[33] *State v. Fox, supra* note 3.

[34] Brief for appellant at 25.

[35] *State v. Zlomke*, 268 Neb. 891, 689 N.W.2d 181 (2004).

and search official records to determine if the defendant had been arrested or injured. The court then heard testimony from law enforcement, the clerk of the court, and the defendant's family members before continuing with trial.

We find that the thoroughness of the inquiry conducted by the court in *Zlomke* was prudent. Nothing in this opinion should be read as discouraging it. Among other things, such procedures minimize the potential necessity of a new trial upon a later showing that the absence was actually unknowing or involuntary. But Warlick ultimately misunderstands the court's obligations in such a situation, as well as the question presented on appeal.

[23-25] It is the duty of the court to have a defendant who is in custody brought into court when any proceeding connected with the trial of the case is taken.[36] However, it is the duty of a defendant out on bail to attend the sessions of the court, and the failure to do so constitutes voluntary absence on the defendant's part and a waiver of the defendant's right to be present.[37] The same reasoning applies to a defendant out on bail who initially appears but who fails to attend the trial after a recess. It is the duty of a defendant out on bail to continue to be present after a trial recess, and the defendant's failure to do so constitutes voluntary absence on the defendant's part and a waiver of the defendant's right to be present.

[26,27] A waiver is the voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct.[38] We have explained that while a court should make a "reasonable effort to secure the presence of [a] defendant at any proceeding during the trial,"[39] if a defendant could "prevent the completion of the trial by voluntarily absenting himself, and thus tie the

---

[36] *Scott v. State*, 113 Neb. 657, 204 N.W. 381 (1925). See, also, *id.*

[37] See *id.*

[38] *State v. Qualls*, 284 Neb. 929, 824 N.W.2d 362 (2012).

[39] *Scott v. State, supra* note 36, 113 Neb. at 661, 204 N.W. at 382.

hands of justice, he would be permitted to take advantage of his own wrong."[40]

Here, Warlick and Clark were present for the commencement of their joint trial, but disappeared during the noon recess. The court waited over half an hour to see if they would reappear, before determining that they had voluntarily absented themselves. Although the trial proceeded without Warlick and without the court's knowing the exact circumstances of the sudden disappearance of Warlick and Clark, the court had already made reasonable efforts to secure Warlick's presence the day of trial and was under no further obligation to hunt him down before continuing.

[28,29] Moreover, the judgment was not final until Warlick was sentenced.[41] In determining on direct appeal whether a defendant has waived the right to be present, we do not merely look to the evidence available at the moment the court pronounced the defendant's absence to be voluntary, but at the entirety of the evidence in the record. Warlick had an opportunity, through his motion for a new trial, to present any evidence that his absence was, contrary to initial indications, involuntary or unknowing. He did not do so. Warlick was the person possessing the most knowledge as to the circumstances of his own disappearance. We apply to a defendant, who was out on bail and has failed without explanation to be present at trial, the fundamental proposition that the burden to produce evidence will rest upon the party who possesses positive and complete knowledge concerning the existence of facts which the other party would otherwise be called upon to negative, or if the evidence to prove a fact is chiefly within the party's control.[42]

Warlick's unexplained, multiple-day disappearance with Clark, his codefendant, after the noon recess was sufficient

---

[40] *Id*. at 660, 204 N.W. at 382.

[41] See *State v. Melton, ante* p. 159, 953 N.W.2d 246 (2021).

[42] See *State v. Pratt*, 287 Neb. 455, 842 N.W.2d 800 (2014).

to support the district court's finding that Warlick knowingly and voluntarily waived his presence at trial. We find no merit to any argument that the court violated Warlick's right to be present.

### 4. SUFFICIENCY OF EVIDENCE

[30] Lastly, we consider Warlick's attacks on the sufficiency of the evidence to support his convictions. In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[43] The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[44]

[31-33] A conviction cannot be based upon suspicion, speculation, the weakness of the status of the accused, the embarrassing position in which the accused finds himself or herself, or the mere fact that some unfavorable circumstances are not satisfactorily explained.[45] But a criminal conviction may soundly be based solely on circumstantial evidence. And a conviction may be based on circumstantial evidence regardless of whether the inferences of guilt of each line of circumstantial proof are stronger than the inferences of nonguilt.[46] The circumstantial evidence, like direct evidence, is considered as an interrelated whole.[47] The sufficiency of the evidence is often

---

[43] *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020).

[44] *Id.*

[45] *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999); *State v. Eberhardt*, 176 Neb. 18, 125 N.W.2d 1 (1963).

[46] See *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016).

[47] See *id.*

tested against theoretical and speculative possibilities not fairly raised by the record, and inferences are sometimes considered which, though entirely possible or even probable, are drawn from evidence which the jury may have disbelieved.[48]

### (a) Possession and Carrying

Warlick first asserts that there was insufficient evidence from which a reasonable trier of fact could determine beyond a reasonable doubt that Warlick had actual or constructive possession of the marijuana or the firearm found under the spare tire of the vehicle. Warlick thus asserts the evidence was insufficient to convict him of possession of a controlled substance with intent to distribute[49]; distributing or possessing marijuana without affixing an official stamp, label, or other indicium of payment of tax[50]; possession of a deadly weapon during the commission of a felony[51]; possession of a deadly weapon by a prohibited person[52]; possession of a stolen firearm[53]; and carrying a concealed weapon.[54]

Each of these crimes, with the exception of carrying a concealed weapon, has possession as an element.[55] Further, we find that Warlick's assignments of error and arguments regarding possession charges attack with sufficient specificity the element of "carrying" a concealed weapon "on or about his or her person."[56] According to Warlick, the evidence was

---

[48] *Id.*

[49] § 28-416.

[50] § 77-4309.

[51] § 28-1205.

[52] § 28-1206.

[53] § 28-1212.03.

[54] § 28-1202.

[55] See, §§ 28-416, 77-4309, 28-1205, 28-1206, 28-1212.03, and 28-1202; *In re Interest of Shea B.*, 3 Neb. App. 750, 532 N.W.2d 52 (1995).

[56] See § 28-1202.

insufficient for all these convictions because the marijuana and firearm were not found on Warlick's person, it was not Warlick's vehicle where these items were found, the marijuana and firearm were underneath a spare tire accessible only from the back seat and with what was presumably Clark's professional hair product, Warlick was not sitting in the back seat but instead was sitting in the front passenger seat, and Warlick could not have smelled the marijuana that was wrapped in plastic wrap with a masking agent. Regarding the firearm, Warlick further points out that it was in a separate bag, with the hair product, next to the marijuana. Warlick argues that any inconsistency in Warlick's and Clark's descriptions of their travels to the arresting deputy was insufficient to reasonably infer that Warlick possessed the firearm or the marijuana.

With the exception of the element of being a felon for purposes of the conviction of possession of a deadly weapon by a prohibited person, which will be addressed in the next section, Warlick does not specifically assign and argue that the evidence was insufficient to establish any other elements of these "possession" crimes—such as an intent to deliver for the crime of possession of a controlled substance with intent to deliver or the weapon being stolen for purposes of the crime of possessing a stolen firearm. Therefore, we do not address those elements.

### (i) Crimes of Possession of Prohibited Substance

Black's Law Dictionary defines "possess" as "[t]o have in one's actual control; to have possession of."[57] It defines "possession" to include, among other things, both actual and constructive possession,[58] and our common law similarly recognizes both.[59]

---

[57] Black's Law Dictionary 1351 (10th ed. 2014).

[58] See *id.*

[59] *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014).

[34-36] Actual possession is synonymous with physical possession.[60] Constructive possession, in contrast, may be proved by mere ownership, dominion, or control over contraband itself, coupled with the intent to exercise control over the same.[61] We have held under the relevant statutory language, read as a whole, that certain crimes involving "possession," such as being a person who "uses a firearm . . . to commit any felony" or who unlawfully "possesses a firearm . . . during the commission of any felony,"[62] do not include constructive possession.[63] However, we have long held under the language of the criminal narcotics statutes here at issue that possession may be either actual or constructive.[64]

[37-39] Two persons may have constructive possession, or one may have actual possession and the other have constructive possession.[65] Constructive possession may be proved by direct or circumstantial evidence and may be shown by the accused's proximity to the item at the time of the arrest or by a showing of dominion over it.[66] Thus, possession of a controlled substance means either (1) knowingly having it on one's person or (2) knowing of the substance's presence and having control over the substance.[67]

[40-42] Warlick is correct that mere presence at a place where the item in question is found is not sufficient to show constructive possession.[68] But possession of an illegal substance can be inferred from a vehicle passenger's proximity to the substance or other circumstantial evidence that

---

[60] *Id.*

[61] *Id.*

[62] § 28-1205.

[63] See *State v. Garza, supra* note 45.

[64] See *State v. Schuller, supra* note 59.

[65] *Kennedy v. State*, 171 Neb. 160, 105 N.W.2d 710 (1960).

[66] See *State v. Garcia*, 216 Neb. 769, 345 N.W.2d 826 (1984).

[67] See, e.g., *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

[68] See *id*.

affirmatively links the passenger to the substance.[69] Evidence that a defendant had constructive possession of a drug with knowledge of its presence and its character as a controlled substance is sufficient to support a finding of possession and to sustain a conviction for unlawful possession.[70]

[43-45] We have said that a passenger's joint possession of a controlled substance found in a motor vehicle can be established by evidence that (1) supports an inference that the driver was involved in drug trafficking, as distinguished from possessing illegal drugs for personal use; (2) shows the passenger acted suspiciously during a traffic stop; and (3) shows the passenger was not a casual occupant but someone who had been traveling a considerable distance with the driver.[71] On this first factor, we have explained that a finder of fact may reasonably infer that a driver with a possessory interest in a vehicle who is transporting a large quantity of illegal drugs would not invite a passenger into the vehicle unless the passenger knew of the valuable cargo contained therein and was conscious of the risks and ramifications involved with transporting it.[72] On the second factor, we have explained that possession of a controlled substance can be inferred if the vehicle's occupant acts oddly during the traffic stop, gives explanations that are inconsistent with the explanations of other occupants of the vehicle, or generally gives an implausible explanation for the travels.[73]

[46] We have never held that in order to support a reasonable inference of constructive possession, the illegal substance must be of such proximity to the passenger of a vehicle as

---

[69] *Id.*

[70] *State v. Garcia, supra* note 66.

[71] *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011); *State v. Draganescu, supra* note 67.

[72] See, *State v. McGee, supra* note 71; *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011).

[73] *State v. Howard, supra* note 72.

to be conveniently accessed or within immediate physical reach. While such proximity may under the circumstances create a stronger inference of the element of possession, it is not necessary to prove the exercise of ownership, dominion, or control over contraband, coupled with the intent to exercise control over it.[74]

We hold that there was sufficient evidence from which a rational trier of fact could find that Warlick had possession of the marijuana for purposes of the crimes of possession of a controlled substance with intent to deliver[75] and distributing or possessing marijuana without affixing an official stamp, label, or other indicium of payment of tax.[76]

First, there was evidence supporting an inference that Clark, the driver, was involved in drug trafficking, as distinguished from possessing illegal drugs for personal use. The deputy testified that 4 pounds of marijuana were seized and that based on his training and experience, this amount is consistent with distribution rather than personal use.

Second, there was evidence that both Warlick and Clark acted suspiciously during the stop. The deputy testified that Clark told him the purpose of his trip was to go gambling in Las Vegas, and the deputy stated that "[w]hen asking [Clark] questions, he seemed to pause, think about his answer before answering." Warlick provided the deputy a different story, telling him that Warlick and Clark had made a trip to California, and Warlick never mentioned gambling or a trip to Las Vegas. While it is conceivable that these two versions of Warlick and Clark's travels have an innocent explanation, they are sufficiently inconsistent to support an inference of constructive possession.[77]

---

[74] See, *State v. Schuller, supra* note 59; *State v. Draganescu, supra* note 67; *State v. Frieze*, 3 Neb. App. 263, 525 N.W.2d 646 (1994). See, also, *State v. McGee, supra* note 71.

[75] See § 28-416.

[76] See § 77-4309.

[77] See *State v. McGee, supra* note 71.

Finally, both Warlick and Clark indicated Warlick had been traveling with Clark for a considerable distance over multiple state lines. Thus, Warlick was not a casual occupant of Clark's vehicle.

### (ii) Crimes of Possession
### of Weapon

This same evidence supports the trier of fact's finding that Warlick was in constructive possession of a weapon for purposes of possession of a deadly weapon during the commission of a felony,[78] possession of a deadly weapon by a prohibited person,[79] and possession of a stolen firearm.[80] In addition to this evidence, we find Neb. Rev. Stat. § 28-1212 (Reissue 2016) applicable to these weapons convictions. Section 28-1212 states that the presence of a firearm in a motor vehicle is prima facie evidence that it is possessed by all persons occupying the motor vehicle when it is found.

Section 28-1212 provides in full:

> The presence in a motor vehicle other than a public vehicle of any firearm or instrument referred to in section 28-1203, 28-1206, 28-1207, or 28-1212.03 shall be prima facie evidence that it is in the possession of and is carried by all persons occupying such motor vehicle at the time such firearm or instrument is found, except that this section shall not be applicable if such firearm or instrument is found upon the person of one of the occupants therein.

Prima facie evidence means that proof presented on an issue is sufficient to submit the issue to the fact finder for disposition and precludes a directed verdict against the party with the burden of proof on the issue in a jury trial or exclusion of a particular issue from consideration in a nonjury trial.[81]

---

[78] See § 28-1205.

[79] See § 28-1206.

[80] See § 28-1212.03.

[81] *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991).

Thus, we find no merit to Warlick's argument that the evidence was insufficient to support the element of possession in the crimes of possession of a deadly weapon during the commission of a felony;[82] possession of a deadly weapon by a prohibited person,[83] and possession of a stolen firearm.[84]

### (iii) Crime of Carrying Concealed Weapon

We find merit, however, to Warlick's contention that the evidence was insufficient to support a finding that he was carrying a weapon concealed on or about his person, in violation of § 28-1202, a Class I misdemeanor.

[47] Section 28-1202 sets forth that "any person who carries a weapon or weapons concealed on or about his or her person, such as a handgun, a knife, brass or iron knuckles, or any other deadly weapon, commits the offense of carrying a concealed weapon." As noted by the Nebraska Court of Appeals in *State v. Blackson*,[85] possession is not an element of a violation of § 28-1202. It follows that constructive possession does not establish the elements of § 28-1202 of "carr[ying]" a concealed weapon "on or about his or her person."

In *State v. Garza*, we equated "carrying" a weapon with actual possession and differentiated it from constructive possession.[86] In rejecting the inclusion of constructive possession for the crime of being a person who "uses a firearm . . . to commit any felony" or who unlawfully "possesses a firearm . . . during the commission of any felony," in violation of § 28-1205,[87] we explained that the possession prong prohibited "carrying" deadly weapons while under certain circumstances,

---

[82] See § 28-1205.

[83] See § 28-1206.

[84] See § 28-1212.03.

[85] *State v. Blackson*, 1 Neb. App. 94, 487 N.W.2d 580 (1992).

[86] See *State v. Garza, supra* note 45.

[87] But see § 28-1205(4) (providing, through amendments pursuant to 2009 Neb. Laws, L.B. 63, § 14, that "[p]ossession" of deadly weapon may be proved through constructive possession immediately prior to, or immediately after, commission of felony).

i.e., when persons commit felonies.[88] We held that the purpose of § 28-1205 is to prevent the threat of violence and accompanying danger to human life that is present whenever one has a deadly weapon "within one's immediate control" during the commission of a felony.[89] Therefore, we explained, to include constructive possession for the "possession" described in § 28-1205 would be "inconsistent with the plain meaning of possession and the purpose of § 28-1205."[90]

[48,49] A penal statute is to be strictly construed in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[91] The phrase "to carry" is not generally defined by the criminal statutes, but § 28-1202 plainly limits the place of the weapon's concealment to "on or about his or her person." In *Blackson*, the Court of Appeals relied on Black's Law Dictionary's definition of "carrying arms or weapons" as "wearing, bearing, or carrying them 'upon the person or in the clothing or in a pocket, for the purpose of use, or for the purpose of being armed and ready for offensive or defensive action in case of a conflict with another person.'"[92]

In applying § 28-1202 to drivers of motor vehicles, we have repeatedly held that "[a] weapon is concealed on or about the person if it is concealed in such proximity to the driver of an automobile as to be convenient of access and within immediate physical reach."[93] That is not to say that for the evidence to be sufficient to convict a driver of violating § 28-1202,

---

[88] See *id.* See, also, *State v. Ring*, 233 Neb. 720, 447 N.W.2d 908 (1989), *disapproved on other grounds, State v. Irish*, 292 Neb. 513, 873 N.W.2d 161 (2016).

[89] *State v. Garza, supra* note 45, 256 Neb. at 765, 592 N.W.2d at 494.

[90] *Id.*

[91] See *State v. Garza, supra* note 45.

[92] *State v. Blackson, supra* note 85, 1 Neb. App. at 98, 487 N.W.2d at 583.

[93] *State v. Saccomano*, 218 Neb. 435, 436, 355 N.W.2d 791, 792 (1984). Accord *State v. Goodwin*, 184 Neb. 537, 169 N.W.2d 270 (1969).

the weapon must have been found on the driver's person at the time it was seized or while driving, but there must be some evidence beyond mere speculation that the weapon was within immediate physical reach on or about the date the defendant is charged with committing the crime.[94]

[50] We see no reason not to apply this standard likewise to the passenger of a motor vehicle. And it is consistent with our description in *Garza* of "carrying" a weapon, which involves the weapon's being "within one's immediate control."[95] It is also consistent with other jurisdictions' understanding of similar statutes that to be "carried," the weapon must be within such physical proximity to be of immediate and direct access for prompt and immediate use.[96] Thus, a weapon is concealed on or about the person if it is concealed in such proximity to the passenger of a motor vehicle as to be convenient of access and within immediate physical reach.

But, as Warlick points out, there was no evidence that the firearm was convenient of access and within his immediate physical reach. While the deputy testified that the weapon was accessible from the back seat, Warlick was not in the back seat at the time of the stop. There was no evidence presented that Warlick had been in the back seat before the stop. Furthermore, even though the cargo area may have been accessible from the back seat, the firearm was located within a bag that was itself located underneath the spare tire within the cargo area.

---

[94] See, *State v. Senn*, 295 Neb. 315, 888 N.W.2d 716 (2016); *State v. Saccomano, supra* note 93; *State v. Goodwin, supra* note 93; *Kennedy v. State, supra* note 65; In re Interest of Cory P., 7 Neb. App. 397, 584 N.W.2d 820 (1998); *In re Interest of Shea B., supra* note 55.

[95] *State v. Garza, supra* note 45, 256 Neb. at 765, 592 N.W.2d at 494.

[96] See, e.g., *Littrell v. State*, 699 So. 2d 962 (Ala. Crim. App. 1997); *People v. Smith*, 72 Cal. App. 2d Supp. 875, 164 P.2d 857 (1946); *State v. Hinkle*, 970 So. 2d 433 (Fla. App. 2007); *People v. Niemoth*, 322 Ill. 51, 152 N.E. 537 (1926); *Corbin v. State*, 237 Md. 486, 206 A.2d 809 (1965); *State v. Prigge*, 907 N.W.2d 635 (Minn. 2018); *State v. Williams*, 636 P.2d 1092 (Utah 1981).

The evidence was insufficient to demonstrate Warlick was a "person who carries a weapon or weapons concealed on or about his or her person" for purposes of § 28-1202. Therefore, we reverse Warlick's conviction and sentence for violating § 28-1202 and remand the cause with directions to vacate.

### (b) Prior Felony Convictions

For his conviction of possession of a deadly weapon by a prohibited person, in violation of § 28-1206, Warlick alternatively argues that there was insufficient evidence to support the element of being a "prohibited person." Under § 28-1206(1)(a)(i), a person who has previously been convicted of a felony is a prohibited person. Warlick argues that exhibits 14 and 15, showing prior felony convictions, were inadmissible because they failed to affirmatively demonstrate he had counsel or had waived counsel in relation to those convictions. Warlick does not dispute that the prior convictions reflected in the exhibits, if admissible, established he was a felon.

Warlick's argument is premised on case law that has since been overruled. In a line of cases, we had held that a prior conviction could not be considered in the absence of affirmative proof that the defendant had or waived counsel at the time of conviction.[97] At the time of its inception, this line of case law was supported by the opinion of the U.S. Supreme Court in *Burgett v. Texas*,[98] which prohibited courts from presuming that a prior conviction was obtained in compliance with the Sixth Amendment. However, in *State v. Vann*,[99] we recognized that the U.S. Supreme Court case of *Parke v. Raley*[100] clarified that *Burgett* applied only in the narrow context in which it was

---

[97] See, e.g., *State v. Hall*, 268 Neb. 91, 679 N.W.2d 760 (2004); *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002); *State v. Portsche*, 258 Neb. 926, 606 N.W.2d 794 (2000).

[98] *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967).

[99] *State v. Vann, supra* note 4.

[100] *Parke v. Raley*, 506 U.S. 20, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992).

decided—when state criminal defendants' federal constitutional right to counsel had not yet been recognized.

[51] In *Vann*, we concluded that as a factual matter, it is unlikely that many modern convictions are obtained in violation of a defendant's Sixth Amendment rights, due to the recognition of a constitutional right to counsel in *Gideon v. Wainwright*[101] and the further recognition of that right in state statutes or rules of criminal procedure.[102] Accordingly, we held in *Vann* that any conviction after *Gideon* is entitled to a presumption of regularity, such that once the government establishes the existence of a prior conviction, it becomes the defendant's burden to prove that he or she did not have counsel and did not waive the right to counsel at the time of conviction.[103]

Exhibit 14 is evidence of a prior conviction of felon in possession of a firearm in Illinois in 2017, and exhibit 15 is evidence of a prior conviction of aggravated vehicle hijacking, burglary, and aggravated unlawful restraint in Illinois in 2010. Both of these convictions are post-*Gideon* and thus are entitled to a presumption of regularity.

We also observe that exhibit 15 explicitly states that Warlick was appointed a public defender on June 16, 2009, and there is no indication that counsel sought to withdraw or that Warlick proceeded pro se at any time before he pled and was found guilty on June 10, 2010. Further, exhibit 14 indicates that there was a motion to withdraw as attorney filed on June 30, 2016, and an appearance, possibly by a different attorney, filed on July 26. There is no indication that Warlick proceeded pro se or was not represented by counsel at the time he pled guilty on October 25, 2017.

---

[101] *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

[102] See, e.g., Neb. Rev. Stat. § 29-3903 (Cum. Supp. 2018).

[103] *State v. Vann, supra* note 4.

We find no merit to Warlick's assertion that, because the State failed to affirmatively demonstrate Warlick had or waived counsel, exhibits 14 and 15 were inadmissible for purposes of establishing the element of being a felon for the crime of felon in possession in violation of § 28-1206.

## VI. CONCLUSION

For the foregoing reasons, we affirm all of Warlick's convictions with the exception of the misdemeanor violation of carrying a concealed weapon in violation of § 28-1202. We reverse, and remand with directions for the district court to vacate the conviction for the violation of § 28-1202 and the sentence for that violation.

Affirmed in part, and in part reversed and remanded with directions.